This suit is by the complainant, Morland Mortgage Company, a corporation, to foreclose its mortgage, in which suit the defendant Township of Woodbridge filed a petition to have the amount of what it claims by way of taxes determined and paid.
The matter was referred on May 15th, 1945, to a special master for hearing and report. The special master's report dated April 29th, 1947, recommends dismissal of the township's petition on the grounds (a) that the matter therein set forth should have been raised by counter-claim; and (b) that the proofs offered before the master are unsatisfactory for a finding of fact.
The defendants, Mt. Lebanon Cemetery Association, New Mt. Lebanon Cemetery Association, United Cemeteries Corporation and the Township of Woodbridge, all except to the report of the master upon the ground that since the township was originally joined in the proceedings as a defendant, and although it suffered a decree pro confesso to be entered against it October 18th, 1943, its petition now should be treated as analogous to a notice to have its encumbrance reported upon, and upon the further ground that the proofs in evidence are adequate for a decision of the matter.
The master's report shows that several lengthy and protracted hearings were conducted before him and that voluminous testimony was taken, transcribed and furnished to the master. By the testimony it appears that the dedication and development of the cemetery was traced and the conflicting claims as to the amount of taxes depending upon the question of dedication of the mortgaged lands for cemetery uses and purposes presented, so that the proofs in evidence I find are ample for a decision of the matter. I agree with exceptants and sustain the exceptions.
The bill alleges that such asserted tax liens are subject to the lien of complainant's mortgage. The question therefore resolves itself into what amount is due the township, if *Page 85 
any, since there can be no question as to priority. The propriety of the proceedings before the master was not challenged by any of the parties and I will dispose of the matter on the voluminous testimony taken before the master.
In the testimony it is conceded that the cemeteries did not come into existence until shortly before the end of the year 1929. The assessing dates for the years 1929 and 1930 had passed and the amounts due or the balances thereof for those years and interest are conceded to have been properly assessed. Exhibits in the case set forth no claim for taxes for the years 1929 and 1930 respecting the tract therein referred to as Lot 1, Block 372, the tract north of Poor Farm Road. Another exhibit sets forth the balance of the taxes due for the years 1929 and 1930 with respect to Lot 1-A, Block 357, which is the westerly portion of the land between Poor Farm Road and the Port Reading Railroad. And still another sets forth the balance of the taxes for the years 1929 and 1930 respecting the tract therein referred to as Lots 1-B and 2-B Block 357, the easterly portion of the land between Poor Farm Road and the Port Reading Railroad. These taxes aggregate with interest about $2,000. Other than those taxes, it is contended that no taxes are due on the cemetery lands involved in this proceeding (except for the tract south of the railroad) since said lands have, from the inception of the cemeteries, late in the year 1929, to the present time, been dedicated to cemetery uses.
At least some dedication is conceded by the township in its petition in the cause. The petition of the township says the taxes have been assessed "notwithstanding the acknowledged sale and use of parts of the cemetery tract for dedicated cemetery purposes and which said sales as aforesaid have been progressive." Such continued assessment, according to the petition, was prompted because of the failure of the present sequestrator or the former management of the cemetery to secure apportionments or releases from the township. The petitioner concedes that since the organization of the cemetery "many parcels of land have been sold to individuals and associations for burial purposes * * *." Excluding the tract south of the railroad the claim of the township would, if valid, aggregate with interest about $60,000. *Page 86 
The testimony sort of divides the cemetery property for convenience into two tracts: one north of Poor Farm Road consisting of Sections 1, 2 and 3, Mt. Lebanon Cemetery and a tract of about 11 acres northwest thereof; and the other south of Poor Farm Road and north of the Port Reading Railroad consisting of Part 2, Section 1, Mt. Lebanon Cemetery and Section 1, New Mt. Lebanon Cemetery.
What was the status after the first assessing date, October 1st, 1930? On April 1st, 1929, the Board of Health of the Township of Woodbridge, by resolution, approved the maintenance and operation of these cemeteries. On April 8th, 1929, the Township of Woodbridge granted a permit for the maintenance and operation of the cemeteries. Section 1, Mt. Lebanon Cemetery, was fully plotted and planned for cemetery use upon a map dated in September, 1929, and recorded in the Middlesex county clerk's office January 3d 1930. Similarly Section 2, Mt. Lebanon Cemetery was by a map dated in January, 1930, and recorded the following month; Section 3, Mt. Lebanon Cemetery, by a map dated in April, 1930; Part 2, Section 1, Mt. Lebanon Cemetery by a map dated in March, 1930, and recorded in July, 1932, and Section 1, New Mt. Lebanon Cemetery, by a map dated in April, 1930, and recorded July 21st, 1932.
R.S. 8:2-27 provides that cemetery lands, however incorporated, actually used for cemetery purposes, and the bonds and mortgages given to secure the purchase-money of such lands, shall be exempt from all taxes. In Gottlieb v. West RidgelawnCemetery, 109 N.J. Eq. 585; 158 Atl. Rep. 422, the Court of Errors and Appeals said: "* * * In our opinion, under the statute, the land of the cemetery company cannot be sold for the purpose of satisfying a judgment if it is a part of a tract laid out in lots for burial purposes, although not presently used for such purposes. The mere fact that these lots have not yet been appropriated to the interment of bodies is immaterial. The statutory provision * * * provides that such lots shall not be subject to execution, and the Court of Chancery, therefore, has no more right to direct a sale of such lots for the purpose of satisfying a judgment than has a court of law. * * *." InFairview *Page 87 Heights Cemetery Co. v. Fay, 90 N.J. Law 427;101 Atl. Rep. 405; affirmed, 91 N.J. Law 688; 106 Atl. Rep. 891, in commenting upon the statutory enactments exempting cemeteries from taxation said: "* * * These various enactments are in parimateria and must be considered together as presenting a cohesive and consistent legislative scheme declaratory of a state policy of setting aside, by a separate species of tenure, through corporate agencies, sections of land, free from taxation, when such lands are actually in use, or within reasonable contemplation of being used for the purpose declared, in the statute. * * *."
In Hoboken v. North Bergen, 43 N.J. Law 146, the controversy revolved about the taxability of five acres of land, part of a 17-acre tract owned by the City of Hoboken as a cemetery. The five acres were not used for burial purposes, but were cultivated by a superintendent. The contention made was that the tax exemption related only to lands actually used for burial purposes and that arable land within the boundaries of the cemetery although adjoining that occupied by graves was taxable. As to this contention the court held: "* * * Such construction of the general act is too narrow. The space required for burial purposes constantly increases, and a reasonable quantity of land for future occupancy should be provided. Land acquired for such purpose is not taxable. * * *."
Here the dedication of the lands for cemetery purposes is admitted and the lands and premises are fully plotted and planned and maps filed showing the property was laid out for cemetery purposes. The proofs go beyond reasonably contemplated use, imminent purpose of using or reasonable contemplation. As far back as March, 1930, the proofs show development by way of the building of roads, grading and beautification since which time there has been more than reasonably contemplated use, imminent purpose of using or reasonable contemplation, and the proofs show actual use by way of many sales and burials which have constantly improved in number and which have been spread over a considerable area. True, the burials have not been so extensive as to cover all or most of the premises but the cited authorities do not require such. *Page 88 
In West Ridgelawn Cemetery v. Clifton, 20 N.J. Mis. R. 399,403, setting aside assessments in the cemetery, the State Board of Tax Appeals found: "* * * The evidence is quite clear that, as of the assessing date, clearing of the woodland on the property had been commenced and was still under way, that the property had been fully mapped and plotted, that rudimentary roads had been put in and some grading done, and that all of this work was clearly designed for the imminent purpose of using this property for cemetery purposes. * * *."
If lands are "within reasonable contemplation" for cemetery purposes and are owned by a cemetery association, the right of exemption is established. West Ridgelawn Cemetery v. Clifton,109 N.J. Law 146; 160 Atl. Rep. 534.
The evidence offered shows the continued expansion, development and use of which the earlier proofs gave promise, have actually come to pass. The map in evidence shows increasing sales and burials, the chapel which had been contemplated actually completed and the grading and other work done very early in the history of the cemetery. In addition to the map this is shown by photographs taken as far back as June, 1932. Other exhibits show the location and extent of properties sold as of July, 1946, in excess of 50% of the areas comprehended and shows the general new locations as of July, 1946, to the number of more than 1800.
Contemplated use for cemetery purposes I gather from the evidence has never been seriously interrupted. There are areas which are the subject of contemplated use which are still not in actual use and that contemplated use is reasonable. Ten to fifteen years past areas now fully developed and reasonably occupied by burials were in contemplated use. True, there is a small area upon which are erected buildings for the housing of equipment, a necessary incident to the operation of the cemetery, and some small area used for the purpose of growing sod, another necessary incident to the operation of a cemetery. These are widely separated and located at two extremes of the entire property. The testimony establishes the rule of use and reasonably contemplated use to all of the property, excepting the area beyond the railroad, and this is so *Page 89 
even though some areas may not now in their present condition be used for burial purposes. Some portions of the cemetery are marked by the word "Reserved" as shown by the filed maps, but the testimony is that the portion so marked does not mean that those portions are not for sale. In fact some have been sold and the remainder are reserved for a certain type of sale, such as family groups and organizations for use by their members.
The Township of Woodbridge persisted throughout the years in taxing the entire area of the lands dedicated for cemetery purposes in the face of the fact that it had actual notice in that what was going on plainly and openly indicated that the premises were being progressively developed for burial purposes and that plots thereof were being sold to innocent purchasers in good faith. Notwithstanding such notice and knowledge on the part of the township it has neglected and refrained from taking any action to assert its presently claimed rights in the premises. Neither have the defendant cemetery companies sought to protect themselves or their dead by appeals from such tax assessments and by asserting their claim to exemption. Cemeteries are "God's Holy Acres" and are a charitable trust. The plot holders and their slumbering dead are entitled to the protection of the court against the inaction of both the Township of Woodbridge and the defendant cemetery associations. By the very nature of the res
this protection must be extended to the lot and plot owners and to the graves of the dead. The exemption from taxation is fundamentally dependent upon a bona fide compliance with the statute, and our judicial pronouncements thereon, and when that is demonstrated as having taken place, then the right to exemption follows.
I find that the entire premises originally mortgaged and described in the amended bill of complaint, except for the tract south of the railroad, are fully dedicated for cemetery uses and purposes and have been so dedicated and used since the inception of the cemetery in 1929. I conclude that there is nothing due the Township of Woodbridge by way of lien for taxes, excluding from such determination the tract south of the railroad upon which there is due the sum of approximately $2,000. *Page 90