ANDREW, J. T. C.
This matter involves the eligibility of the subject property for valuation, assessment and taxation pursuant to the Farmland Assessment Act of 1964, N.J.S.A. 54:4-23.1 et seq., in light of the Municipal Land Use Law, specifically, N.J.S.A. 40:55D-59. It is conceded by the parties that except for the application of N.J.S.A. 40:55D-59, the property qualifies for farmland assessment treatment.
The tax years at issue are 1978, 1979 and 1980. The parties have stipulated that if this court determines that the property is not entitled to assessment as farmland, the original assessments placed on each parcel, which were affirmed by the Middlesex County Board of Taxation, are correct. In the event that the court determines that the property is eligible for farmland assessment, the parties have agreed that the assessments shall be as follows:
Block 315.08, Lot 29: $ 200
Lot 30: $ 200
Lot 31: $ 200
Lot 33: $ 200
Lot 34: $1,100 (Class 3B portion: qualified farmland)
Lot 37: $ 200
Lot 38: $ 200
Lot 39: $ 200
*559 N.J.S.A. 40:55D-59 is part of the Municipal Land Use Law, N.J.S.A. 40:55D-1 et seq., which took effect August 1, 1976.[1] N.J.S.A. 40:55D-59 provides in part:
a. Any parcel of land receiving preliminary subdivision, site plan or planned development approval for a use other than agriculture or horticulture, notwithstanding its valuation, assessment, and taxation as an agricultural or horticultural use pursuant to the provisions of the “Farmland Assessment Act of 1964,” (P.L.1964, c. 48, C. 54:4 — 23.1 et seq.) shall be valued, assessed and taxed as of January 1 of the year following such preliminary approval as other land in the taxing district....
b. Any parcel of land, otherwise qualifying as an agricultural or horticultural use pursuant to the provisions of the “Farmland Assessment Act of 1964” ... for which preliminary app oval shall have lapsed pursuant to law, or for which the owner thereof shall have made request in writing to the approving Municipal Body for rescinding of such preliminary and all subsequent approvals, shall be assessed, valued and taxed in the manner provided in the “Farmland Assessment Act of 1964” ... as of January 1 of the year following such lapse or rescission.
Some time prior to August 1, 1976, the effective date of the statute, plaintiffs sought and received preliminary and final subdivision approval for all of the lots in question. Thereafter, but prior to the first assessment date herein, October 1, 1977, plaintiffs made application seeking rescission of the subdivision approval. The application was denied prior to October 1, 1977.[2]
Defendant East Brunswick takes the position that the provisions of N.J.S.A. 40:55D 59 are dispositive of the matter. Defendant contends that because plaintiffs received preliminary and final subdivision approval prior to October 1 of the pretax year, paragraph (a) of the statute mandates the denial of farmland assessment treatment.
*560 Plaintiffs advance three arguments in support of their claim that farmland treatment is warranted. The contentions were not presented in the following order by plaintiffs but the court finds that disposition is facilitated by rearrangement. First, plaintiffs claim that the statute reinstates farmland assessment by virtue of the owner’s request for rescission of the subdivision approval. Second, they maintain that N.J.S.A. 40:55D-59 does not apply to their lands because the statute deals with preliminary subdivision approvals subsequent to the enactment of the statute, and because the intent of the statute is to deny farmland assessment treatment only where the land is actually applied to a use other than agricultural or horticultural use. Third, if the statute mandates denial of farmland assessment based solely on subdivision approval, plaintiffs assert that it is unconstitutional. Because the court is in agreement with the first argument, the remaining issues need not be addressed.
The issues presented are of first impression. No cases have been brought to the court’s attention that have construed any of the provisions of N.J.S.A. 40:55D-59. In addition, the legislative history and public hearings attendant upon the enactment of the Municipal Land Use Law contain no reference to this particular statute.
Because the court believes that the application of paragraph (b) of N.J.S.A. 40:55D-59 resolves the issue in favor of plaintiffs, it will be assumed that paragraph (a) of the statute does apply to remove the farmland treatment of the subject lots. The court notes, but does not decide, the question whether such retrospective application of the statute to parcels of land receiving subdivision approval prior to the effective date of the statute is proper.
The court also observes the constitutional argument posed by plaintiffs but refrains from a determination of the constitutionality of N.J.S.A. 40:55D-59 by virtue of the disposition of this case on an an alternative nonconstitutional issue. Donadio v. Cunningham, 58 N.J. 309, 277 A.2d 375 (1971).
*561 Plaintiffs contend that the request that was made, prior to January 1, 1978, to rescind all prior subdivision approvals invokes the operation of paragraph (b) of N.J.S.A. 40:55D-59 and reinstates farmland assessment for the tax year 1978, even though the request was ultimately denied. The paragraph contains an apparent inconsistency, not addressed by either party. The body of the paragraph provides that if a property owner who has received preliminary subdivision approval makes a “request in writing to the approving Municipal Body for rescinding of such preliminary and all subsequent approvals,” his land shall be assessed, valued and taxed pursuant to the Farmland Assessment Act. However, the paragraph concludes with the statement that the farmland assessment shall take effect on “January 1 of the year following such . . . rescission.” (Emphasis supplied). Had the language been “January 1 of the year following such . . . request for rescission,” or words to that effect, there would be little doubt that the action taken by plaintiffs herein would satisfy the statute. But the statute, as worded, raises the question whether the Legislature, by virtue of the concluding language, intended the reinstatement of farmland assessment to take effect only upon an actual rescission of subdivision approval, or whether merely a request for rescission would suffice.
The court is of the opinion that a request for rescission of prior subdivision approval is all that is needed to activate the statute. The word “rescission” is modified by the word “such,” indicating that the “rescission” intended is that described earlier in the paragraph, which is only a request for rescission. The meaning of words in a statute may be indicated and controlled by those with which they are associated. Germann v. Matriss, 55 N.J. 193, 220, 260 A.2d 825 (1970). In addition, the court is guided by the rule of statutory construction that where there is a conflict between general terms of a statute and other terms of a more specific nature, the specific will be given effect over the general. 2A Sutherland Statutory Construction (Sands, 4th ed. 1973), § 46.05 at 57. Here the statute provides in clear, specific terms that a “request in writing to the approving municipal *562 body for rescinding of such preliminary and all subsequent approvals” shall reinstate farmland assessment. Such language must prevail over the less specific mention of “such . . . rescission” to the extent that the latter verbiage dictates a contrary result.
Where a choice must be made between two interpretations of a statute, the view should be selected which more likely accords with the probable legislative intent. Monmouth v. Wissell, 68 N.J. 35, 43, 342 A.2d 199 (1975). The construction adopted above comports with the legislative design of the Farmland Assessment Act. Although N.J.S.A. 40:55D-59 is not part of the Farmland Assessment Act, consideration of the act is nevertheless proper. “Statutes forming a portion of a comprehensive plan for assessment, levying and collection of realty taxes are in pari materia and must be read together.” Dvorkin v. Dover Tp., 29 N.J. 303, 316, 148 A.2d 793 (1959). In fact, it has been stated that
... an examination of all legislation in a particular field is necessary for a full appreciation of any particular enactment. And this consideration must be more inclusive that the literal inquiry of in pari materia; it must probe basic policy and the pattern and development of the means and procedures used to activate that policy. Sutherland, op. cit., § 45.10 at 33.
Review of the Farmland Assessment Act leads to the conclusion that continuation of farmland treatment depends upon the use to which the land is being put. If the land is not “actively devoted to agricultural or horticultural use,” as defined in the act, it must be valued, assessed and taxed as other land in the taxing district. This is particularly evident in two sections of the act. N.J.S.A. 54:4 — 23.8 provides for the assessment of “roll-back” taxes when land “which is in agricultural or horticultural use and is being valued, assessed and taxed under the provisions of this act, is applied to a use other than agricultural or horticultural . . . . ” In N.J. Turnpike Auth. v. Washington Tp., 137 N.J.Super. 543, 350 A.2d 69 (App.Div.1975), aff’d o. b. 73 N.J. 180, 373 A.2d 652 (1977), the court confirmed the fact that the use to which the property is put is critical:
The usual role for the commencement of a tax exemption on property is that set forth in N.J.S.A. 54:4-3.3b — i. e., the exemption begins on January 1 of the year *563 following that of acquisition. See East Orange v. Palmer, 47 N.J. 307 [220 A.2d 679] (1966). However, the roll-back tax provisions are different from the normal real property tax statute in this respect. The language and purpose of the provisions are clear. It is not a mere change in ownership or possession that triggers the imposition of roll-back taxes; it is a change in the use to which the property is applied. [137 N.J.Super. at 551, 350 A.2d 69].
See, also, NJ.Const (1947), Art. VIII, § 1, Par. 1(b).
This concept is also evident in N.J.S.A. 54:4 — 23.15:
Continuance of valuation, assessment and taxation under this act shall depend upon continuance of the land in agricultural or horticultural use and compliance with the other requirements of this act and not upon continuance in the same owner of title to the land. Liability to the roll-back tax shall attach when a change in use of the land occurs but not when a change in ownership of the title takes place if the new owner continues the land in agricultural or horticultural use, under the conditions prescribed in this act.
The legislative plan is also apparent in N.J.S.A. 40:55D-59 itself. Paragraph (a) of the statute provides that its provisions:
. .. shall apply serially to any development whose preliminary approval proposes construction in stages and separate application for final approval for each stage and only that stage of the development designated for the earliest application for final approval shall be valued, assessed and taxed as provided herein until certificates of occupancy for 50 percent of the building permits in such stage have been issued, at which time the second stage shall be valued, assessed and taxed as provided herein and so on until qualification for valuation, assessment and taxation pursuant to the provisions of the “Farmland Assessment Act of 1964,” . . . lapses for the last stage of such development.
The scheme contemplates taxation of the subject as is other property in the taxing district only upon an actual change in use. Thus, later stages in development retain their farmland assessment even though they have received preliminary subdivision approval, because their use remains agricultural or horticultural. Paragraph (c) of the statute reflects the same design, exempting those parcels from the operation of paragraph (a) that cannot actually be converted into a nonagricultural use:
Any parcel of land to which the provisions of subsection a. hereof are applicable but which cannot be developed because of the lack of available sanitary sewerage or water supply capacity necessary to serve such development shall be exempt from the operation of the provisions of subsection a. herein for the period from January 1 of the year following the calendar year in which such development becomes impracticable because of such lack of capacity to January 1 of the year following the calendar year in which such capacity becomes available.
*564 Finally, paragraph (b) itself contains language indicating that use is paramount. It provides that “Any parcel of land, otherwise qualifying as an agricultural or horticultural use” shall receive farmland treatment following a request for reverse subdivision. (Emphasis supplied). The property does not automatically qualify for farmland treatment upon such a request. Rather, the property must also satisfy all the requirements for farmland treatment contained in the Farmland Assessment Act. These requirements are set forth in N.J.S.A. 54:4-23.6, which provides that land which is actively devoted to agricultural or horticultural use, as defined, shall be eligible for farmland assessment when it meets the following qualifications:
(a) It has been so devoted for at least the 2 successive years immediately preceding the tax year for which valuation under the act is requested;
(b) The area of such land is not less than 5 acres when measured in accordance with the provisions of section 11 hereof; and
(c) Application by the owner of such land for valuation hereunder is submitted on or before August 1 of the year immediately preceding the tax year to the assessor of the taxing district in which such land is situated on the form prescribed by the Director of the Division of Taxation.
It has been stipulated by the parties that plaintiffs satisfied all such requirements with respect to each of the parcels under appeal for each of the tax years in issue.
The statute thus insures that a property owner seeking farmland treatment pursuant to N.J.S.A. 40:55D-59(b) maintains the property solely as a farmland use. Such is the case herein. Although the subject lots received subdivision approval, their use as farmland never changed. Had the use actually changed, farmland treatment could not be restored despite the fact that a request, as outlined in N.J.S.A. 40:55D-59(b), had been made. “The inquiry in the ultimate analysis is the true intention of the law; and, to this end, the particular words are to be made responsive to the essential principle of the law. It is not the words but the internal sense of the law that controls.” Wollen v. Fort Lee, 27 N.J. 408, 418, 142 A.2d 881 (1958).
Defendant argues that “If the property owner were able to reverse the effect of the statute merely by requesting rescission of the approvals, which request was to be denied, the purpose of *565 the statute would be frustrated.” As the above discussion indicates, the construction advanced by plaintiffs is perfectly consistent with the intent and design of the act. Defendant also states that “the request for rescission is a nullity, since the request was denied.” The statute contains no language as to whether the reverse subdivision request must be ultimately granted. A request is all that is needed to reinstate farmland treatment, provided that the land otherwise qualifies for assessment pursuant to the Farmland Assessment Act.
The court concludes, therefore, that the facts herein fall within the operation of N.J.S.A. 40:55D-59(b) and the subject property is entitled to valuation, assessment and taxation pursuant to the provisions of the Farmland Assessment Act. Judgment shall be entered in accordance with the values, noted below, that the subject parcels have for use as farmland.
Block 315.08, Lot 29: $200
Lot 30: $200
Lot 31: $200
Lot 33: $200
Lot 34: Class 3B portion (qualified farmland under the Farmland Assessment Act): $1,100
Class 3A portion (regular farmland not assessed under the Farmland Assessment Act): Land $16,000, Improvements $11,600
Lot 37: $200
Lot 38: $200
Lot 39: $200

 The primary overall objectives of the law were to simplify, better coordinate and, where possible, standardize the requirements and procedures of land use planning and regulation. See Senate County and Municipal Government Committee, Statement to Senate Bill 3054 (April 3, 1975).

 Plaintiffs’ brief gives the dates of November 10, 1977 and March 27, 1978 for the request for, and denial of, reverse subdivision, respectively. The timing of these events, as stated in the body of the opinion, is based upon the stipulation of facts submitted by the parties, by which the court is bound. However, the court’s determination would be unchanged if plaintiffs’ dates were used.