ANDREW, J.T.C.
Plaintiff challenges the constitutionality of N.J.S.A. 40:55D-59, a section of the Municipal Land Use Law, N.J.S.A. 40:55D-1 et seq., which terminates agricultural or horticultural real property assessments and imposes rollback taxes when land which is being valued, assessed and taxed pursuant to the Farmland Assessment Act of 1964, N.J.S.A. 54:4-23.1 et seq., receives preliminary subdivision, site plan or planned development approval. It alleges that specific provisions of N.J.S.A. 40:55D-59(a) are constitutionally violative of the preferential treatment afforded farmland in Art. VIII, § I, par. 1(b), of the New Jersey Constitution.[1] Plaintiff further alleges that the statute violates *601 Art. IV, § VII, par. 4, of the State Constitution by adding to the Municipal Land Use Law an additional object not expressed in the title of the law, and finally contends that the statute is repugnant to Art. IV, § VII, par. 5, of the Constitution because it is an attempt to amend sections of the Farmland Assessment Act, N.J.S.A. 54:4-23.1 et seq., by reference without inserting the amended sections at length.
For the reasons hereinafter stated, I conclude that the challenged provisions do contravene Art. VIII, § I, par. 1(b), of the New Jersey Constitution and are therefore invalid. Because the court is in agreement with plaintiff’s first contention, the remaining issues need not be addressed.
Plaintiff, Centex Homes of New Jersey, Inc., is the owner of eight separately assessed lots in Manalapan Township for which the assessments have been contested. However, only four of these lots implicate a question of constitutional dimensions. These four contiguous parcels collectively comprise 154 acres. It has been conceded by the parties that each lot exceeds five acres and, except for the application of N.J.S.A. 40:55D-59, did in fact meet all of the statutory requirements for valuation, assessment and taxation pursuant to the Farmland Assessment Act, N.J. S.A. 54:4-23.6, for the tax years of 1978,1979 and 1980, and had actually been assessed as farmland[2] for those tax years.
In 1979 plaintiff made application for and received preliminary subdivision approval from the Manalapan Township Planning Board. In accordance with the challenged statute, N.J.S.A. 40:55D-59, Manalapan’s assessor filed a complaint with the Monmouth County Board of Taxation seeking the cessation of the previously granted farmland assessment for 1980 and the imposition of rollback taxes for the 1978 and 1979 tax years. The county board entered judgment in favor of Manalapan. *602 Plaintiff thereupon sought review of that determination in this court.
Since a constitutional question was raised, the Attorney General of the State of New Jersey was permitted to intervene in defense of the constitutional attack upon N.J.S.A. 40:55D-59. N.J.S.A. 52:17A-4(g); R. 4:28-4(d).
N.J.S.A. 40:55D-59, a part of the comprehensive Municipal Land Use Law, N.J.S.A. 40:55D-1 et seq., which took effect August 1, 1976, provides in part:
a. Any parcel of land receiving preliminary subdivision, site plan or planned development approval for a use other than agriculture or horticulture, notwithstanding its valuation, assessment, and taxation as an agricultural or horticultural use pursuant to the provisions of the “Farmland Assessment Act of 1964,” (P.L. 1964, c. 48, C. 54:4-23.1 et seq.), shall be valued, assessed and taxed as of January 1 of the year following such preliminary approval as other land in the taxing district, such value and assessment to be established and taxes paid in accordance with the provisions of sections 8 and 9 of the “Farmland Assessment Act of 1964,” (P.L. 1964, c. 48, C. 54:4-23.1 et seq.)... .
Section 8 of the Farmland Assessment Act, N.J.S.A. 54:4-23.8, provides for rollback taxes when land assessed as farmland “is applied to” a nonagricultural or nonhorticultural use. The deferred tax is measured by the difference, if any, between the tax as assessed under the act and the tax that would have been assessed had the land been taxed as other land in the taxing district, for the year of the change in use and such of the two prior tax years in which the land was assessed as farmland.
Plaintiff contends that the statutory provision in NJ.S.A. 40:55D-59 is in direct conflict with Art. VIII, § I, par. 1(b), of the New Jersey Constitution, which provides in pertinent part:
(b) The Legislature shall enact laws to provide that the value of land, not less than 5 acres in area, which is determined by the assessing officer of the taxing jurisdiction to be actively devoted to agricultural or horticultural use and to have been so devoted for at least the 2 successive years immediately preceding the tax. year in issue, shall, for local tax purposes, on application of the owner, be that value which such land has for agricultural or horticultural use.
Any such laws shall provide that when land which has been valued in this manner for local tax purposes is applied to a use other than for agriculture or horticulture it shall be subject to additional taxes in an amount equal to the difference, if any, between the taxes paid or payable on the basis of the valuation and the assessment authorized hereunder and the taxes that would have been paid or payable had the land been valued and assessed as otherwise *603 provided in this Constitution, in the current year and in such of the tax years immediately preceding, not in excess of 2 such years in which the land was valued as herein authorized. [Emphasis supplied]
Plaintiff asserts that N.J.S.A. 40:55D-59(a) represents a deviation from the mandate of the constitutional provision. Pointing to the language in the Constitution which provides that rollback taxes shall occur when the land “is applied to a use other than for agriculture or horticulture,” plaintiff contends that the Constitution speaks to present use or application of the land and not to future or prospective use. Plaintiff maintains that this position is supported by the constitutional language which directs that the rollback take place in the “current year,” which it interprets to mean the year of the actual change in use.[3]
Plaintiff asserts that the language of the challenged statute requires a denial of agricultural or horticultural assessment as of January 1 of the year following “preliminary subdivision, site plan or planned development approval for a use other than agriculture or horticulture” in spite of the fact that the land may actually be used, as here, for agricultural or horticultural purposes pursuant to the relevant requisites of the Farmland Assessment Act. N.J.S.A. 54:4-23.6. By requiring the rollback to commence January 1 of the year following preliminary subdivision approval, plaintiff maintains that N.J.S.A. 40:55D-59 does not identify preliminary subdivision approval as a current change in use since the Constitution requires that the preferential assessment terminate in the current year (legislatively defined as the year of the change in use), not in the succeeding year. Therefore, plaintiff further maintains, actual use is of no moment in the operation of N.J.S.A. 40:55D-59 and that a change in use is not necessary to trigger rollback taxes. Plaintiff concludes that current use is the determinant for farmland *604 assessment and that only a current or present change in use will cause a termination of the preferential tax treatment and trigger the rollback provisions. 'J
Neither Manalapan nor the Attorney General directly address plaintiffs contentions. Each, however, does hot fail to remind the court of the presumptive constitutionality of a statute and of the heavy burden placed upon a party seeking to overcome the presumption of constitutionality. Smith v. Penta, 81 N.J. 65, 74-75, 405 A.2d 350 (1979), app. dism. 444 U.S. 986, 100 S.Ct. 515, 62 L.Ed.2d 416 (1979); Weisbrod v; Springfield Tp., 1 N.J.Tax 583 (Tax Ct.1980). Relying upon decisional law, both insist that the constitutional phrase, “actively devoted to agricultural or horticultural use,” means that the land must be committed, dedicated or set apart entirely for agricultural or horticultural use. The Attorney General insists that N.J.S.A. 40:55D-59 was a legislative response to the problem of landowners minimally farming land to gain the special tax treatment but who did not possess a true intention of actively devoting land to the prescribed uses. See Andover v. Kymer, 140 N.J.Super. 399, 405-406, 356 A.2d 418 (App.Div.1976); Urban Farms, Inc. v. Wayne Tp., 159 N.J.Super. 61, 68, 386 A.2d 1357 (App.Div. 1978). He asserts that the Legislature, in N.J.S.A. 40:55D-59, saw fit to deem the application for and receipt of preliminary subdivision, site plan or planned development approval for a use other than agriculture or horticulture as a conclusive indication that the land was no longer “devoted” to agriculture or horticulture within the meaning of Art. VIII, § I, par. 1(b), of the State Constitution. The complicated and time-consuming procedures that one must undergo in order to obtain preliminary approval, urges the Attorney General, clearly demonstrate a commitment on the part of an owner to use the property for a nonagricultural or nonhorticultural use. Hence, he concludes, the Legislature properly established a factual benchmark to clearly indicate when land is no longer “devoted” to agricultural or horticultural use.
*605 This court is mindful of the settled rule of judicial policy in this State that a legislative enactment will not be declared invalid unless its contravention of the State Constitution is clear beyond a reasonable doubt. Smith v. Penta, supra, 81 N.J. at 74-75, 405 A.2d 350; Gangemi v. Berry, 25 N.J. 1, 10, 134 A.2d 1 (1957). It is equally clear that plaintiff bears a heavy burden in seeking to overcome the presumptive constitutionality of N.J. S.A. 40:55D-59. Smith v. Penta, supra. However, in spite of the presumption of constitutionality and the heavy burden imposed to overcome the presumption of the constitutional sufficiency of a legislative enactment, the court has an obligation to appraise the enactment’s compliance with the Constitution. A failure to do so would be a profound abdication of a judicial responsibility.
In order to place the constitutional provision in proper perspective, a review of its history is necessary. Art. VIII, § I, par. 1(b), had its genesis in the decision of our Supreme Court in Switz v. Kingsley, 37 N.J. 566, 182 A.2d 841 (1962). In Switz the court determined that a legislative enactment which accorded preferential treatment to agricultural interests in the taxation of real property was repugnant to Art. VIII, § I, par. 1, of the State Constitution which mandated that all real property be assessed according to the same standard of value. Switz v. Kingsley at 585, 182 A.2d 841.
In light of Switz it was evident that nothing less than an amendment to our State Constitution was required if special tax treatment was to be accorded the New Jersey farmer. The Governor’s Farmland Assessment Committee was appointed to make a study and develop recommendations regarding the assessment of farmland. The Committee recommended an amendment to the Constitution “to require the Legislature to enact laws to provide that land actively devoted to agriculture or horticulture be assessed at values for this use only.” Report of Governor’s Farmland Assessment Committee (March 20, 1963).
The Committee’s recommendations were followed, and a constitutional amendment permitting special assessment of land *606 actively devoted to agricultural or horticultural use was proposed in Senate Concurrent Resolution 16 (1963). The statement accompanying the proposal considered the amendment to be “essential to encourage the retention of agriculture as an industry in the State and to preserve agricultural lands in an open space condition.” East Orange v. Livingston Tp., 102 N.J.Super. 512, 534, 246 A.2d 178 (Law Div.1968), aff’d o.b. 54 N.J. 96, 253 A.2d 546 (1969). The primary objective of the proponents of the proposed amendment was “to save the ‘family farm’ and to provide farmers with some economic relief by permitting farmlands to be taxed upon their value as on going farms and not on any other basis.” Ibid.
At the public hearing on the proposed constitutional amendment the chairman of the Governor’s Committee, Senator John A. Waddington, stated at the very outset of the proceeding that the proposal was not a complete solution but it would retard the loss of farmland. He said
.. . [T]his deferred assessment plan can buy time. This time will not fully protect the open spaces unless other measures are used, but it will give us time in New Jersey and will do a great deal in my judgment to inhibit premature development. [Senate Committee on Revision and Amendment of Laws, Public Hearing on S.C.R. 16, “Taxation of Lands Used in Agriculture or Horticulture,” at 7 (April 15, 1963) ]
Dr. George W. Luke, Professor of Agricultural Economics and chairman of the Department of Agricultural Economics at Rutgers University, also served as a member of the Governor’s committee. Speaking as a representative of the College of Agriculture, he characterized the amendment as follows:
... [Although not the complete answer to the preservation of open spaces and agriculture, [it] can be considered as a giant step in the direction of maintaining agriculture a little longer in New Jersey. [Id. at 51-52; emphasis supplied]
The same sentiment was voiced by Walter Hunt, the Clerk of East Amwell Township in Hunterdon County and chairman of the Legislative Committee of the New Jersey Association of Township Committeemen:
... This proposed amendment holds the promise of slowing up the rate of development by minimizing tax pressures upon farmers to hasten the day when they sell their lands for other uses.. .
*607 No one believes that this amendment or programs developed under it will preserve all farmlands against future conversion to other uses. [Id. at 35-36; emphasis supplied]
With regard to the rollback feature of the proposed amendment, Senator Waddington, speaking at the public hearing, said:
That to give protection to the municipality against pure speculation, there be included a tax deferral or recapture feature of two years [sic] at the time of a change in use of the land. This recapture feature would be predicated on the difference in assessment at the new use and at the farm use. [Id. at 3; emphasis supplied]
These comments of proponents of the constitutional amendment indicate that they viewed the program as designed to retard or slow the pace of conversion of farmland to more intensive uses. It was also apparent that landowners, other than farmers, would be able to take advantage of the constitutional provision. The reason for the inclusion of a three-year rollback tax was to discourage short-term land speculators. Luke, “... Actively Devoted ..., The First Decade of the New Jersey Farmland Assessment Act” (1976). As was reported by the Center for Analysis of Public Issues, there was an initial problem trying to define a “farmer” and thereby limit the application of the constitutional provision. Ultimately, this thorny problem was not solved, with the result that the constitutional proposal provided special tax assessment to any owner whose land met the qualifications, whether he was a bona fide farmer or not.[4] Kolesar & Scholl, “Misplaced Hopes, Misspent Millions,” at 24, Center for the Analysis of Public Issues, Princeton, N.J. (1972). See Paz v. DeSimone, 139 N.J.Super. 102, 106, 352 A.2d 609 (Ch.Div.1976). It was the Committee’s decision to *608 determine eligibility based on the use of the land, which could include a speculator but by the same token would not disqualify a farmer.[5] In any event,, the result would be the same. Land devoted to agricultural or horticultural use would contribute to the physical and economic agricultural industry in the State. It would also provide opportunities for some farmers to continue in farming by leasing nearby farmland. The land, if qualified based on use, would also provide open space, a subsidiary but important purpose of the constitutional amendment. The rollback provision was considered to be a sufficient quid pro quo to the taxing district for the benefits conferred. This, however, was and is open to differing viewpoints. But it is not for this court to conclude that the constitutional provision for rollback is insufficient when the intent of the people of this State is reflected in the clear language of the constitutional amendment.[6]
The available history of the amendment to the State Constitution reflects an intent to preserve farmland in the State as long as possible even though nonfarmers or speculators could benefit along with farmers. That objective was and is achieved so long as actual current use remains the dominant criterion.
The rollback feature was designed to provide some measure of recapture of the taxes forgiven by the amendment and to offset to a degree the expected landholding by speculators. The effect of N.J.S.A. 40:55D-59 is contrary to these concepts. The operation of the challenged statute does not encourage the retention of farm use subsequent to the grant of preliminary approval, *609 even though the owner could continue to devote the land to farmland use for three years or more.[7] N.J.S.A. 40:55D-49.
The statute in question ignores actual or current use and looks solely to intended or future use, measured by preliminary subdivision, site plan or planned development approval. To accelerate termination of farmland assessment and imposition of rollback, even though the land qualifies for such assessment, is contrary to the constitutional design.
In addition to a review of the history of the amendment, an examination of the amendment’s implementing legislation is instructive and supportive of the conclusion that N.J.S.A. 40:55D-59 is constitutionally infirm. The Governor’s Farmland Committee continued in existence after the adoption of the constitutional amendment at the general election held November 5, 1963. Its purpose was to advise and counsel the Legislature in the preparation of the implementing legislation. Kolesar, “Saving Farmland”, supra at 6; see, also, Luke, supra.
That actual or present use and not intention is the critical element is particularly evident in two sections of the Farmland Assessment Act. N.J.S.A. 54:4-23.8 provides for the assessment of rollback taxes when land “which is in agricultural or horticultural use and is being valued, assessed and taxed under the provisions of this act, is applied to a use other than agricultural or horticultural.... ”
Confirming the fact that the use to which the property is put is crucial, the court in N.J. Turnpike Auth. v. Washington Tp., 137 N.J.Super. 543, 350 A.2d 69 (App.Div.1975), aff’d o.b. 73 N.J. 180, 373 A.2d 652 (1977), said:
The usual role for the commencement of a tax exemption on property is that set forth in N.J.S.A. 54:4-3.3b-i.e., the exemption begins on January 1 of the year following that of acquisition. See East Orange v. Palmer, 47 N.J. 307 [220 A.2d 679] (1966). However, the roll-back tax provisions are different from the normal real property tax statute in this respect. The language and purpose of the *610 provisions are clear. It is not a mere change m ownership or possession that triggers the imposition of roll-back taxes; it is a change in the use to which the property is applied. [137 N.J.Super. at 551, 350 A.2d 69]
This concept is also evident in N.J.S.A. 54:4-23.15:
Continuance of valuation, assessment and taxation under this act shall depend upon continuance of the land in agricultural or horticultural use and compliance with the other requirements of this act and not upon continuance in the same owner of title to the land. Liability to the roll-back tax shall attach when a change in use of the land occurs but not when a change in ownership of the title takes place if the new owner continues the land in agricultural or horticultural use, under the conditions prescribed in this act.
It is interesting to note that even the statute under consideration embraces the concept of current use, albeit somewhat inconsistently. The second portion of paragraph (a) of N.J.S.A. 40:55D-59 states that its provisions:
... shall apply serially to any development whose preliminary approval proposes construction in stages and separate application for final approval for each stage and only that stage of the development designated for the earliest application for final approval shall be valued, assessed and taxed as provided herein until certificates of occupancy for 50 percent of the building permits in such stage have been issued, at which time the second stage shall be valued, assessed and taxed as provided herein and so on until qualification for valuation, assessment and taxation pursuant to the provisions of the “Farmland Assessment Act of 1964,” ... lapses for the last stage of such development.
This language demonstrates a plan which contemplates a cessation of farmland assessment upon an actual change in use. Later stages in development retain their farmland assessment even though preliminary subdivision approval has been granted, because the use has remained agricultural or horticultural. This accords with constitutional purpose as it encourages the retention of land in agricultural use even though it can be said that the landowner intends a different use in the future. Paragraph (c) of the statute reflects the same design, exempting those parcels from the operation of paragraph (a) that cannot actually be converted into a nonagricultural use:
Any parcel of land to which the provisions of subsection a. hereof are applicable but which cannot be developed because of the lack of available sanitary sewerage or water supply capacity necessary to serve such development shall be exempt from the operation of the provisions of subsection a. herein for the period from January 1 of the year following the calendar year in which such development becomes impracticable because of such lack of capacity to January 1 of the year following the calendar year in which such capacity becomes available.
*611 Aside from the history of the constitutional amendment and a review of its implementing legislation, this court has also examined the language used by the framers of the amendment in light of decisional law. A fair reading of the amendment leads to the conclusion that continuation of farmland treatment depends upon actual or current use rather than intended or future use. Both the Attorney General and Manalapan have urged that the constitutional phrase, “actively devoted to agricultural or horticultural use,” means that the land must be committed, dedicated or set apart wholly, for agricultural or horticultural use. The receipt of preliminary subdivision approval, the argument proceeds, is so far removed from “devotion,” as defined, as to no longer warrant preferential farmland treatment. They rely upon East Orange v. Livingston Tp., 102 N.J.Super. 512, 246 A.2d 178 (Law Div.1968), aff’d 54 N.J. 96, 253 A.2d 546 (1969), and Beth Israel Cemetery Ass’n v. Woodbridge Tp., 1 N.J.Tax 149 (Tax Ct.1980), aff’d 180 N.J.Super. 508, 435 A.2d 1159 (App.Div.1981), certif. den. 87 N.J. 416, 434 A.2d 1091 (1981), for support.
In East Orange plaintiff sought a judgment directing defendant Livingston Township to assess 2,500 acres of property owned by East Orange as farmland for the tax year of 1968. The majority of the acreage was alleged to be permanent pasture and woodland devoted to agricultural use within the meaning of the Farmland Assessment Act because the land was used for the growing and sale of hay, timber and firewood from which East Orange derived annual income in excess of the statutory minimum. Despite the introduction of evidence detailing an active program for the management of the woodlands, and indicating sales of forest products totaling $24,989.05, $3,719.08 and $1,509.75 in the years 1965,1966 and 1967, respectively, the court concluded from all the evidence presented that
It is abundantly clear that the lands of the East Orange Water Reserve are used for the purpose for which they were originally acquired, namely “for the purpose and for the protection of a public water supply.” Any other uses of or activities upon the said properties are merely incidental to the use of the land as a watershed. [102 NJ.Super. at 529, 246 A.2d 178]
*612 The court further explained why the agricultural activities undertaken in that case would not qualify the property for taxation as farmland:
The pointed inquiry on this hypothesis is whether, by virtue of the activities relating to the sales of hay, timber and cordwood, it can be said that East Orange Water Reserve is “actively devoted” to “agricultural use” within the meaning of N.J.S.A. 54:4-23.2. Even though the agricultural use is “active” in the literal sense that East Orange has realized income in excess of $500 per annum for the past two years from the sale of timber, cordwood and hay (N.J. S.A. 54:4-23.5), compliance with this single criterion does not per se render the Water Reserve as land “devoted” to agricultural use.
All of the experts recognized that there can be multiple uses of woodlands or forests, which could include or combine the production of water, wood, recreation, education and the like. Depending upon the particular lands involved, one use tends to become dominant. The principal use of the East Orange Water Reserve is a watershed. Any commercial gain from the sale of hay, timber or wood is merely an incidental by-product of the maintenance of the Water Reserve woodlands. The management of the forest, including the planting, harvest and removal of trees, is for the essential purpose of encouraging the recharge and replenishment of the underground wells. As far as the state program is concerned, the cutting plan for trees is not for the purpose of producing lumber commercially but with a view towards the primary use of lands as a watershed. Consequently, from any vantage point, the agricultural uses of the Water Reserve must be regarded as subservient to its dominant use as a public water supply. In no sense, therefore, can it be said that the East Orange Water Reserve is devoted, that is, committed, or dedicated, or set apart or appropriated, or given up wholly or chiefly to the production for sale of agricultural products of any kind within the meaning of the Farmland Assessment Act of 1964. [Id. at 535-537, 246 A.2d 178]
The East Orange facts differ from those herein in that the court was confronted with two active current uses. Here the court is presented, on one hand, with an active current use which meets the requisites for farmland assessment and, on the other hand, a “clear signal” (preliminary subdivision approval) of the landowner’s intent to develop the land for nonagricultural or nonhorticultural purposes at some future time.
In this proceeding plaintiff meets the requirements of the term “devote” in its usual significance. For each of the tax years the landowner did in fact commit, appropriate and set aside the property for farmland use. Whatever plaintiff’s present intent was as to future use is of no consequence. A bona fide farmer who has land assessed as farmland is not denied this favored treatment simply because he harbors a firm *613 intent to utilize his land for nonfarm purposes at some future date, whether it be in the near or distant future. The purpose of the constitutional amendment and its implementing legislation was to benefit landowners who complied with the objective criteria set forth. The central criterion was use not future or intended use but current or present use.
This conclusion is buttressed by the constitutional phrase which triggers the rollback feature. Rollback is imposed when the “land ... is applied to a use other than for agriculture or horticulture . . . . ” The Tax Court had occasion to consider this phrase in Jackson Tp. v. Paolin, 3 N.J.Tax 39, 48, 181 N.J.Super. 293, 437 A.2d 344 (Tax Ct.1981). Attempting to ascertain legislative [8] purpose the court gave the relevant words their ordinary and well understood meaning by using the definitions set forth in the American Heritage Dictionary of the English Language, which were:
Apply: ... 2. To put to or adopt for a special use.... 4. To devote (oneself or one’s efforts) to something.
Change: ... la. The process or condition of changing; alteration or modification; transformation, b. The replacing of one thing for another, substitution. 2. A transition from one state, condition, or phase to another; the change of seasons. 3. Something different, variety. [Id. at 48-49,181 N.J.Super. 293,437 A .2d 344]
The conclusion reached was that the definitions suggested that what was intended was an “active conversion from one positive type of land use to another.” Ibid. The court went on to say that its analysis cogently indicated that the intention was that use of a property had to be fundamentally different from agricultural use before rollback taxes could be assessed. It seems evident that when land is in qualifying agricultural use, it does not cease to be such merely upon the granting of prelimi *614 nary subdivision, site plan or planned development approval. The Constitution requires actual change in use, not intended change in use.
At oral argument on the cross-motions for summary judgment the Attorney General referred to this court’s opinion in Beth Israel v. Woodbridge Tp., supra, as additional support for its position that devotion means intended use not merely current active use. In Beth Israel the court was faced with an exemption claim by plaintiff, a cemetery company, pursuant to N.J. S.A. 8A:5-10, which exempts cemetery companies from the payment of real estate taxes on lands dedicated for cemetery purposes. The facts revealed that the vacant land involved was 19.5 acres and had originally been acquired by plaintiff for cemetery purposes. It was considered as exempt property by the assessor until he learned that plaintiff had entered into a written agreement to sell the property. Plaintiff had also stated in a request to the New Jersey Cemetery Board for approval of the sale, as required by statute, that the land to be conveyed was not necessary or suitable for interment purposes. The holding of this court was that intention was implicit and since plaintiff no longer intended to use the vacant land for cemetery purposes the exemption claim had to be denied.
It is clear that Beth Israel does not support the Attorney General’s position. The tests are different. There, exemption could have been permitted provided that the land were actually used for cemetery purposes or were “within reasonable contemplation” of use for cemetery purposes. Morland Mtg. Co. v. Mt. Lebanon Cemetery Ass’n, 141 N.J.Eq. 83, 88, 56 A.2d 7 (1947). Vacant land which was not presently used could still be exempted from local property tax, provided it was held for future cemetery use. Denial of exemption was appropriate because the facts made it evident that plaintiff no longer held the land for that future purpose. Clearly the test in Beth Israel is not only present use but contemplated future use, hence a determination of intent is significant. Here, the test is not contemplated future use; rather, the constitutional provision speaks in terms of current or present function. The purposes of the constitu *615 tional amendment and N.J.S.A. 8A:5 10 are also different. The purpose of the farmland assessment provision of the Constitution is to provide an economic incentive to landowners if they presently put their land to farm use, while the purpose of N.J.S.A. 8A:5 10 was to insure that land held for future cemetery use would not be denied exemption since such land would provide a public benefit.
Although not confronted with the precise issue presented in this case, our courts have had at least two occasions to consider the question of whether intended future use would control even though the land involved satisfied all of the statutory criteria for farmland assessment. In Andover v. Kymer, supra the taxing district advanced the proposition that land cannot qualify for farmland assessment if it is held primarily for speculation while the agricultural use is simply incidental to the primary use. The court disposed of this contention in the following manner:
We find no merit in the township’s contention that since the taxpayer holds the land for resale, its primary use is land speculation, farming is only a secondary or incidental use and, accordingly, it does not qualify for farmland assessment. Here, unlike East Orange, supra, the production and sale of hay are not merely incidental to the dominant use of the land — there, as a water reserve. The land is not presently being used for any other purpose but farming. Even if the taxpayer were the farmer whose ultimate aim was to sell the land for another use in the near future, if the township’s claim were accepted, he would not qualify for farmland assessment status. Accordingly, considering speculation as a dominant use would contravene the purpose of the statute — to tax land actively devoted to farming only at its value for agricultural use and not its value for a prospective higher use. The Legislature has incorporated the rollback tax provisions into the act, N.JS.A. 54:4 — 23.8, in order to help protect municipalities from land speculation by providing, where there has been a change in use, for an additional tax on the land that takes into account the taxes that would have been payable had the land been assessed as other land in the taxing district in the year of change in use and in such of the two tax years immediately preceding in which the land was assessed and taxed as farmland. [140 NJ.Super. at 405, 356 A.2d 418]
Again, in Urban Farms, Inc. v. Wayne Tp., supra, the taxing district contended that the taxpayer’s admitted intended use for the property was nonagricultural, therefore farmland assessment should be denied. The court summarily rejected this argument on the basis of Andover and said:
*616 A similar argument was raised and rejected in Andover Tp. v. Kymer, supra. There we held that considering speculative or intended use of the property would contravene the purpose of the statute to tax land devoted to agricultural use only at its value for that use and not its value for a prospective higher use. [159 NJ.Super. Id. at 68, 386 A.2d 1357]
Even though the Appellate Division in both Andover and Urban Farms was construing the statutory language of the Farmland Assessment Act instead of the constitutional amendment, no distinction can be made since the relevant statutory language echoes the identical constitutional language.
As expressed earlier, the framers of the constitutional amendment realized that it would not prevent speculation and that speculators could benefit from the preferential treatment accorded by the farmland assessment program. The Governor’s Committee made a conscious policy decision that eligibility would be premised solely on the land qualifications. If land was utilized for agricultural or horticultural use, as outlined in the constitutional amendment and the implementing legislation, preferred valuation, assessment and taxation would follow.
Two additional points require mention. First, the Attorney General has indicated that the Legislature saw fit to deem the receipt of preliminary subdivision, site plan or planned development approval for a use other than agriculture or horticulture as a conclusive indication that the land was no longer “devoted” to agriculture or horticulture within the meaning of the State Constitution. This legislative determination has created a substantive rule of law. The statute in question is framed in mandatory terms and is, in effect, a command to assessors and to county boards of taxation to seek to remove and in fact withdraw preferential treatment once the preliminary subdivision for a use other than farmland has been granted. There seems to be little doubt but that an absolute rule of law has been created. This means that a change in use has in fact occurred notwithstanding the fact that the land is being farmed pursuant to the Constitution. The fact that a landowner has received preliminary subdivision approval is not conclusive regarding his plans for the land. Depending on any variety of factors, intensive development of the land may not take place. *617 As noted previously, in C.O.W. Construction Co. v. East Brunswick Tp., supra, plaintiff sought and received preliminary and final subdivision approval and then requested rescission of the subdivision approval, all the while maintaining the property in a qualifying farmland status.
The Supreme Court of Florida has had occasion to consider this point in Bass v. General Development Corp., 374 So.2d 479 (1979). In Bass the pertinent statute provided that land which was previously classified as agricultural based upon use would be converted to a nonagricultural use by virtue of the mere filing of a subdivision plat. The court found that the filing of a subdivision plat had little to do with the present use of property; rather, it was indicative only of what an owner intended to do in the future. It was determined that the enactment singled out a class of property owners and denied them equal protection of the law.
The last point that requires mention is the Attorney General’s contention that legislative history subsequent to the enactment of N.J.S.A. 40:55D 59 is pertinent. In 1977 the Legislature approved a bill, Senate 1495, which would have repealed N.J. S.A. 40:55D-59. The accompanying statement provided that the repeal was sought because of the repugnancy of N.J.S.A. 40:55D-59 to the constitutional amendment and the Farmland Assessment Act. The Governor failed to sign the bill and made a statement as to why he did not. He indicated that a developer would be able to buy farmland and still receive preferential tax treatment even though the property was targeted for eventual development. The Attorney General argues that the Governor determined that the enactment in question was constitutionally valid in that it conformed to the original purpose of the constitutional amendment, namely, to encourage the devotion of land to farmland and to discourage more intensive development.
The legislative history and public hearings attendant upon the enactment of the Municipal Land Use Law contain no reference to the challenged statute. Events occuring subsequent to the enactment of the statute in question do not constitute legislative history and do little to assist resolution of the present issue.
*618 If one were to accept the Attorney General’s argument as persuasive, it is also equally arguable and persuasive that while the Governor may have felt that the statute was valid, the Legislature did not. In any event, determinations of the constitutional validity of a legislative enactment rests not with the legislative or executive branches of government but with the Judiciary. It is interesting to note, however, that a bill was introduced by Senator Dumont on March 1, 1982 seeking the repeal of N.J.S.A. 40:55D-59 because, as revealed by the policy statement appended to the bill, it conflicts with Art. VIII, § I, par. 1(b), of the State Constitution and the Farmland Assessment Act.
For the reasons previously stated, I conclude that N.J.S.A. 40:55D-59 impermissibly impinges upon Art. VIII, § I, par. 1(b), of the New Jersey Constitution and is, therefore, invalid. The Clerk of the Tax Court is directed to enter judgment reinstating farmland assessments as follows:
1978,1979 and 1980
Block 25 Lot 22-F $ 7,700
Block 25 . Lot 22-G $ 7,700
Block 25 Lot 22-1 $34,200
Block 25 Lot 23-B $22,100

The court was presented with the same constitutional argument in C.O.W. Construction Co. v. East Brunswick Tp., 2 N.J.Tax 556 (Tax Ct.1981). However, the issue was not decided, by virtue of the disposition of the case on an *601 alternative nonconstitutional issue. Id at 560; see Donadio v. Cunningham, 58 N.J. 309, 277 A.2d 375 (1971).

As used in this opinion “farmland” means land devoted to agricultural or horticultural use. N.J.S.A. 54:4-23.2; 23.7.

lt is noteworthy that the Legislature, in adopting N.J.S.A. 54:4-23.8, followed almost word for word the constitutional provision for rollback but added a parenthetical phrase, “the year of the change in use” after the phrase “current year,” apparently in an effort to show that “current year” and “the year of the change in use” were synonymous.

Apparently, there seemed to be no way of eliminating all but bona fide farmers without making the requirements so stringent that many farmers would be disqualified. Kolesar & Scholl, supra. See, also, “Property Taxation of Agricultural and Open Space Land,” 8 HarvJ.Legis. 158, 169 (1970), which indicates that in drafting a use value assessment statute it is extremely difficult to distinguish between the farmer landowner and the speculator landowner. This may be further complicated by the fact that some traditional farmers may themselves be speculators.

Professor Luke in “.. . Actively Devoted.. .supra at 8, stated that the Farmland Assessment Committee recommended the rollback provision to “offset the anticipated role of speculators who hold land for other than farming purposes.”

Professor Luke has indicated that the Governor’s Committee had considered a number of rollback periods up to five years but compromised on a three-year period measured by the year of the change in use and the two preceding years. Luke, supra at 9.

In C.O.W. v. East Brunswick, supra, the contemplated change in use did not, in fact, take place. After both preliminary and final subdivision approval was granted, the owner sought rescission of subdivision.

Although in Paolin the court was reviewing the language used in N.J.S.A. 54:4-23.8, while here we are concerned with the phrase in the State Constitution, it makes no difference since the phrase invoking rollback is the same in both provisions. In the construction of a constitutional provision the goal is to effectuate the intent of the people in its adoption, and this is found in the written expression. Fischer v. Bedminster Tp., 5 N.J. 534, 541, 76 A.2d 673 (1950).