BALDWIN CONSTRUCTION CO., A CORPORATION OF NEW
JERSEY, ET ALS., PLAINTIFFS-RESPONDENTS, v. ES-
SEX COUNTY BOARD OF TAXATION AND CITY OF
EAST ORANGE, A MUNICIPAL CORPORATION, DE-
FENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued October 19, 1953—Decided October 30, 1953.

Before Judges EASTWOOD, JAYNE and FRANCIS.

*Mr. Herbert J. Hannoch* and *Mr. Blair Reiley* argued the cause for the respondents (*Mr. Joseph L. Lippman, Messrs. Hannoch, Lasser, Weinstein & Myers, Messrs. Martin & Reiley, Mr. Selick J. Mindes, Messrs. Levy & Krauss, Messrs. Sanderson & Engle,* and *Mr. Bernard Shurkin,* attorneys for various respondents in the consolidated appeals).

*Mr. James Rosen,* Deputy Attorney-General, argued the cause for the appellants (*Mr. Theodore D. Parsons,* Attorney-General, *Mr. Benjamin M. Taub,* Deputy Attorney-General, attorneys for appellant Essex County Board of Taxation; *Mr. Donald Karrakis,* attorney for appellant City of East Orange).

The opinion of the court was delivered by

FRANCIS, J. A. D. In the exercise of the authority conferred by *N. J. S. A.* 54:3–17 *et seq.,* and 54:4–46 *et seq.,* the Essex County Board of Taxation undertook to "revise, correct and equalize" the assessed valuation of real and personal property in the City of East Orange. To accomplish this, on March 20, 1952 it issued a single order to the assessor, directing substantial increases in the 1952 assessments of a large number of parcels of real estate.

Respondents, being some of the owners affected by the order, filed a complaint in lieu of prerogative writ in the Law Division of this court against appellants, Essex County

Board of Taxation and City of East Orange, charging that the methods used by the tax board in arriving at the various increases in the assessments were arbitrary, unreasonable and not uniform in their application to all the property in the city and that the increases resulted, not in the accomplishment of the statutory mandate to bring about the taxation of *all* property in the county or in the taxing district equally and at its true value, but in assessments which discriminated against them and caused them to bear an unequal and disproportionate share of the tax burden. The relief sought was a judgment that the order of the tax board is void and that the increases in the assessments are discriminatory and void.

In support of their action in bypassing the county tax board and the Division of Tax Appeals, the property owners alleged that since the county board had made the orders in question, an adequate review of their validity could not be obtained in that agency, and that under the law no authority existed in either board to grant relief against discriminatory assessments unless such assessments were above true value. It was further asserted as a practical basis for intervention by the courts that the prosecution of individual appeals before the boards by the large number of taxpayers affected, would necessitate repetitious testimony and prohibitive cost for any one of them.

The tax board and the city moved to dismiss the action on the ground that the administrative remedies of appeal to the county and state tax boards had not been exhausted. The motion was denied: *Baldwin Const. Co. v. Essex County Board of Taxation*, 21 *N. J. Super.* 370 (*Law Div.* 1952).

Thereupon answers were filed and some discovery proceedings engaged in. The county board then moved for summary judgment, contending that under *Rule* 3 :81–8 (now *R. R.* 4 :88–8) review of its final action, as a state administrative agency, was by appeal to the Appellate Division.

Again the application was denied in large measure upon the same ground as the earlier motion, namely, that under

*Rule* 3:81–14 (now. *R. R.* 4:88–14) the exhaustion of administrative review was not necessary because manifestly the interests of justice required initial resort to the courts. *Ibid.,* 24 *N. J. Super.* 252 (*Law Div.* 1952). Apparently the major factor which brought about this conclusion was the doubt which, the court felt, exists as to the authority of either the county or state tax board to remedy discriminatory assessments, where doing so would reduce such assessments below the true value of the property.

On appeal, this ruling was affirmed *per curiam* on certain terms. *Ibid.,* 27 *N. J. Super.* 240 (*App. Div.* 1953). Thereafter, the cause was reargued at our suggestion.

■ In 1908 the rule was reaffirmed in New Jersey that if a taxpayer's property is assessed at true value, the fact that the property of others in the same district is assessed at less than true value provided no ground for reducing his assessment below true value. In such a situation, his only redress is to apply for an increase in the valuations of the others. *Royal Mfg. Co. v. Board of Equalization,* 76 *N. J. L.* 402 (*Sup. Ct.* 1908), affirmed 78 *N. J. L.* 337 (*E. & A.* 1909); *Maxson v. Segoine,* 53 *N. J. L.* 339 (*Sup. Ct.* 1891), affirmed 54 *N. J. L.* 212 (*E. & A.* 1891); *State, etc., v. Koster,* 38 *N. J. L.* 308 (*Sup. Ct.* 1876); *State, etc., v. Taylor,* 35 *N. J. L.* 184 (*Sup. Ct.* 1871); *State v. Dickerson,* 25 *N. J. L.* 427 (*Sup. Ct.* 1856). The view that no other relief could be given, no matter how manifest the discrimination, stemmed from the direction of the 1844 Constitution that "property shall be assessed for taxes * * * according to its true value" (*Art.* IV, § VII, *par.* 12), and from the legislative prescription that "each county board of taxation shall secure taxation of all property in the county at its true value, in order that all property * * * shall bear its full, equal and just share of taxes." (*N. J. S. A.* 54:3–13)

Recognition of the *Royal* case persisted down to 1946, when *Hillsborough Township v. Cromwell,* 326 *U. S.* 620, 66 *S. Ct.* 445, 90 *L. Ed.* 358, was decided. There it was

declared that the constitutional safeguard of the Fourteenth Amendment of the United States Constitution, against the taking of property without due process of law and in denial of the equal protection of the law, is not satisfied by a doctrine which imposes upon a taxpayer, who is subjected to discrimination in the matter of assessment of his property, the burden of seeking an increase in the valuations of the properties of the other members of his class.

Since that time, although there have been statements in the opinions of our courts giving heed to the broader vista for relief opened to the taxpayer (*Jersey City v. Division of Tax Appeals*, 5 *N. J. Super.* 375 (*App. Div.* 1949), affirmed 5 *N. J.* 433 (1950); *Hackensack Water Co. v. Township of North Bergen*, 8 *N. J. Super.* 139 (*App. Div.* 1950); *Delaware, Lackawanna & Western R. R. Co. v. City of Hoboken*, 16 *N. J. Super.* 543 (*App. Div.* 1951), reversed on other grounds, 10 *N. J.* 418 (1952)), there has been no specific overruling of the *Royal* case. At the oral argument the parties urged that such action be taken because there remains doubt at the administrative agency level as to its present status.

Deferring, as we must, to the decision of the United States Supreme Court with respect to the operation of the Fourteenth Amendment, we hold that the *Royal* case is no longer the law of this State, so far as it limits the relief obtainable by a victim of unequal treatment in the matter of assessment, to an increase in the assessments of the other taxpayers of his class up to true value, through proceedings instituted and carried on by him.

This declaration results inevitably in the inquiry which is at the heart of the present case. What relief can such a taxpayer obtain, particularly in the county tax boards and in the Division of Tax Appeals? It has been said that he would "have the opportunity to prove the fact before one or other of the tax boards" (*Jersey City v. Division of Tax Appeals, supra, p.* 385), that "his right to equal treatment requires that his assessment be reduced to the *same per-*

*centage of true value* that is imposed on others * * *,"
and that he "may raise the question of discrimination and
have relief before the county tax board or the Division of
Tax Appeals" (*Hackensack Water Co. v. Township of North
Bergen, supra, p.* 141), and that "he may rightfully demand
that his own assessment be reduced to the *common level*"
(*Delaware, Lackawanna & Western R. R. Co. v. City of
Hoboken, supra, p.* 554, 555).

None of these cases considers the nature and extent
of the authority possessed by the tax boards in reviewing
assessments. They are creatures of the Legislature and
have only the powers conferred upon them by the express
language of the statutes or by necessary implication there-
from. *Delaware, Lackawanna & Western R. R. Co. v. City
of Hoboken,* 10 *N. J.* 418 (1952). An examination must
be made, therefore, of the language employed in marking
out their duties and authority.

The county tax boards may:

"After investigation, revise, correct and equalize the assessed
value of all property in the respective taxing districts, increase or
decrease the assessed value of any property not truly valued, assess
property omitted from any assessment, as provided by law, at its
true value, and in general do everything necessary for the taxa-
tion of all property in the county equally and at its true value"
(*N. J. S. A.* 54:4-47) ;

they shall:

"* * * secure the taxation of all property in the county at
its true value * * *" (*N. J. S. A.* 54:3-13) ;

and on appeal they shall:

"* * * revise and correct the assessment in accordance with
the true value of the taxable property. * * *" (*N. J. S. A.*
54:3-22)

In dealing with a problem such as the one under
consideration the function of the Division of Tax Appeals

is purely appellate. There can be no direct appeal to it from the administrative order of the county board. *Hackensack Water Co. v. Division of Tax Appeals,* 2 *N. J.* 157 (1949). As the Supreme Court said in the cited case:

"The entire legislative scheme is to provide a review of assessment valuations, on appeal of either the taxpayer or taxing district, first in the county board and secondly in the state body." (*p.* 166)

Thus it is evident that the powers of the two boards are directed toward accomplishment of the same objective, that is, assessment of property at true value.

 Desirable as it is to commit the present issue to these specialized administrative agencies, we have searched in vain for legislation which authorizes the county board to remedy an unconstitutionally discriminatory assessment, representing true value or less than true value, by reducing it to the common level of assessments generally. As already shown, their field of operation is limited to judgments fixing assessments at true value. Of course, a discriminatory assessment above true value presents no difficulty because decrease to the level of true value is within their jurisdiction.

The suggestion is made that a county board has the authority to deal with a below true value discriminatory assessment, fixed by it, acting administratively, for purposes of revision, correction or equalization of valuations. But no method of doing so has been outlined. It occurred to us, as a possible solution, that if an appeal were filed which called upon the county board to review judicially the order for upward revision, upon the submission of proof establishing the discrimination, the order could be vacated, thus leaving on record the original assessment of the local assessor, which presumptively represents true value. However, this cannot be, because if the proof showed such discrimination as required below true value assessment to eliminate it, the board would have no authority to order such a reduction.

██ 118 

██ Our Constitution of 1947 appears to have abandoned the rigid standard of true value for assessment purposes. Now the organic law is satisfied by assessment "according to the same standard of value." (*Art.* VIII, § I, *par.* 1)

In the absence of statutory implementation, however, the constitutional change does not confer any greater jurisdiction on the tax boards. Nor does it have the effect of invalidating all of the "true value" legislation, for plainly such value applied uniformly is consonant with the new language. Whether advantage can or should be taken of the new and broadened standard, so as to give jurisdiction to the county tax boards to adjudicate problems of unconstitutional discrimination, is a matter entirely within the province of the Legislature.

██ From an administrative standpoint, the *Hillsborough* case appears to leave open an avenue for correction of discriminatory assessments. It will be recalled that the declaration of violation of the Fourteenth Amendment was predicated on the burden which the *Royal* case had imposed on a taxpayer suffering from discrimination. That is, he was given the burden of having the assessments of other members of his class brought up to his level. But the court said also:

"\* \* \* The right is the right to equal treatment. He may not complain if equality is achieved by increasing the same taxes of other members of the class to the level of his own. \* \* \*" (326 *U. S.* 620, 623, 66 *S. Ct.* 445, 448, 90 *L. Ed.* 358)

Therefore, when a local assessor or a county board receives notice of a discriminatory assessment, he or it may investigate, and, on establishment of the fact, revise upward to the level of true value the assessments of the other members of the same class of property owners.

██ However, in the present posture of the case before us, the absence of any present remedy before the tax boards makes imperative the retention of the cause in the Law Division of the Superior Court. Without undertaking to

decide or to limit the scope of the relief obtainable there, it seems apparent that the order of the county board increasing the respondents' assessments may be set aside, if found to be discriminatory.

The judgment is therefore affirmed.