47 N.J. Super. 472 (1957)
136 A.2d 280
SUBURBAN DEPARTMENT STORES, A CORPORATION OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CITY OF EAST ORANGE, A MUNICIPAL CORPORATION OF NEW JERSEY. DEFENDANT-APPELLANT, AND ESSEX COUNTY BOARD OF TAXATION, THIRD-PARTY DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 14, 1957.
Decided November 20, 1957.
*474 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Donald Karrakis argued the cause for appellant City of East Orange.
Mr. David Furman, Deputy Attorney-General, argued the cause for appellant Essex County Board of Taxation (Mr. Grover C. Richman, Jr., Attorney-General, attorney; Mr. John F. Crane, Deputy Attorney-General, of counsel; Mr. Thomas P. Nolan, Deputy Attorney-General, on the brief).
Mr. Herman J. Harris argued the cause for respondent.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendant City of East Orange ("city") appeals from a judgment of the Superior Court, Law Division, awarding plaintiff $670.24 as a refund of a portion of taxes paid for the year 1952 on property at 536 Main Street, East Orange. Defendant Essex County Board of Taxation ("tax board") also appeals the award, as well as that part of the judgment entered against it in favor of the city as third-party plaintiff, amending and reducing the assessment on the property as certified by it for the year *475 1952 and amending the assessment lists and records for that year accordingly.
Plaintiff was not the owner of the premises in question, but paid the taxes thereon. The East Orange Board of Assessors had assessed the property at $47,500 for the year 1952. On March 20, 1952 defendant tax board by order directed the local board of assessors to revise and correct its assessment lists as to certain parcels of real estate, including the premises in question. As a result the assessment was increased to $59,300. Plaintiff paid the tax bill of $3,368.24, based upon this increased assessment, without protest. Neither plaintiff nor the owner ever appealed the assessment. Nor was either a party plaintiff in the case of Baldwin Construction Co. v. Essex County Board of Taxation, 32 N.J. Super. 18 (Law Div. 1954), affirmed 16 N.J. 329 (1954), dealing with other East Orange assessments for 1952. Indeed, neither plaintiff nor the owner has ever contested the tax board's order of March 20, 1952 or the increased assessment, in any court or before any administrative tribunal.
Plaintiff's action to recover $670.24, representing the increase in 1952 taxes brought about by the increased assessment, is predicated upon the result in the Baldwin case. It claims that the court in Baldwin set aside the tax board's order as illegal and void, the effect being to restore all East Orange assessments to the figures originally fixed by the local board of assessors.
Leave having been granted, the city filed a third-party complaint against the tax board in which it asked that if the court should hold that plaintiff was entitled to a judgment against the city, then the tax board be required to revise its 1952 assessment lists and records so as to restore the assessment on plaintiff's property to the original figure.
We deem it unnecessary to set out all the separate defenses raised to the complaint and third-party complaint. Among them were the defenses that plaintiff's payment of the 1952 taxes was voluntary; that it had not contested the tax board order of March 20, 1952 in any court or before any statutory administrative tribunal; that the Baldwin judgment *476 affected only the assessments of the parties plaintiff therein, and plaintiff was not a party; estoppel by reason of failure to pursue statutory procedures and to commence an appropriate action promptly; waiver because of failure to contest the assessment in accordance with statute; laches; and bar by reason of failure to seek relief under R.R. 4:88-15(a).
At pretrial the parties agreed that the action be disposed of on the basis of the stipulations contained in the pretrial order and the exhibits introduced at the conference. The trial court held that the tax board order of March 20, 1952, which resulted in the increased assessment on the property occupied by plaintiff, was rendered null and void by the Baldwin case, and hence it would be unjust for the city to retain the tax representing such increase, paid by plaintiff. It thereupon entered the judgment referred to at the head of this opinion.
There is no need to detail the history of the increases in 1952 assessments in East Orange, for it is fully set out in the Baldwin case above, 16 N.J., at page 332 et seq. Suffice to say that early in 1952 the Essex County Board of Taxation undertook a revision of property assessments throughout the county. Having only a limited budget and a limited period of time within which to effectuate the program, and with the intention of continuing the revision in the years following, the tax board on March 20, 1952 directed certain revisions of the tax lists, generally by increasing the assessments of business and commercial property in the most highly valued sections of municipalities throughout the county, including East Orange. Hundreds of individual parcels were subjected to increases in assessments as a result of this partial revision program, 62 being located in East Orange.
The owners of 31 of the properties in East Orange thereupon inaugurated a joint legal program seeking nullification of the tax board action with respect to their properties. They first filed regular appeals to the county tax board, and when these were dismissed, appealed to the State Division *477 of Tax Appeals from the county board's action. They also instituted a joint action in lieu of prerogative writs in the Law Division under R.R. 4:88. Their contention there was discrimination in the effectuation of the revision of assessments upward on the ground that the revision policy was not uniform nor was it uniformly applied to all similar or comparable property. They also contended there was legal doubt as to whether a complaint of discrimination, seeking uniformity of assessment rather than a decrease of assessments to true value, was cognizable before the administrative agencies, county and state, and they therefore invoked direct judicial relief from unconstitutional action.
Motions were made to dismiss the proceedings for want of jurisdiction, predicated on the failure to exhaust asserted available administrative remedies before the tax boards, but these were denied both in the Law Division and on appeal in the Appellate Division. Baldwin Construction Co. v. Essex County Board of Taxation, 21 N.J. Super. 370 (Law Div. 1952); 24 N.J. Super. 252 (Law Div. 1952); 27 N.J. Super. 240 (App. Div. 1953); 28 N.J. Super. 110 (App. Div. 1953), for the reason that the jurisdiction of the administrative tax boards was either doubtful or non-existent. The tax board and the city then appealed to the Supreme Court, which heard oral argument in the late spring of 1954 and then, without deciding the case, entered an order calling for the immediate trial of the action on the merits in the Law Division and the reargument of the appeal, together with argument of an appeal from whatever decision the Law Division might render.
Pursuant to that order, Law Division Judge Colie tried the case on the merits in July 1954 and concluded that the action of the tax board in revising the assessments in the manner it did was discriminatory and unconstitutional. Although his opinion calls for setting aside the March 20, 1952 order of the tax board, the judgment which he entered provides specifically that the order is "set aside and vacated as to the plaintiffs and their properties particularly mentioned and described on Schedule A hereto attached." Plaintiff's *478 property was, of course, not included in that schedule. It is entirely clear that the Law Division judgment set aside the revised assessments for 1952 only on the properties of the plaintiffs who joined in the proceeding in lieu of prerogative writs. Unaffected by that judgment were not only the 31 other properties in East Orange but hundreds of parcels in the remaining municipalities throughout Essex County, all of which had been revised upward in their assessed valuations pursuant to the same order of the tax board.
After reargument of the entire case before the Supreme Court, that court affirmed the judgment of the Law Division. 16 N.J. 329 (1954). There can be no question that the Supreme Court was adjudicating only the tax status of the properties of the plaintiffs who had joined in the Baldwin action. This is explicit throughout the length of its opinion; the court, for example, said: "Here, we redress the injury sustained by plaintiffs; this is the only justiciable controversy before us," and "This is a proceeding in the nature of certiorari to remedy the undue discrimination suffered by the plaintiff landowners, neither more nor less." 16 N.J. at pages 344, 345. The opinion closes with a direction that "the final judgment vacating the assessment increases made by the county board, [is] accordingly affirmed." 16 N.J. at page 346. The final judgment of the Law Division thus affirmed having, in terms, eliminated only the assessment increases on the properties of the plaintiffs in the action, it must follow that the affirmance of that judgment by the Supreme Court had no broader effect.
This review of the Baldwin litigation convincingly demonstrates that the revised assessment of the present plaintiff's property was never changed or legally affected in any way by those proceedings.
Plaintiff can get no help on the theory that the Baldwin suit was a class action under R.R. 4:36. Everything in that case points in the other direction: the plaintiffs there were interested in their own particular situations and not in altruistically saving every possibly aggrieved taxpayer in *479 East Orange from the effect of the county tax board's order. They sought relief, but relief for themselves alone.
Plaintiff stresses the point that the theory and rationale of the Baldwin decision must extend to every increased assessment directed by the tax board in 1952. The thought here is that we must go behind the Baldwin judgment; we are invited to look at the opinions and the facts set out therein. The answer to this is that judicial opinions have no effect beyond their implementation in judgments. It is only what a court adjudicates, not what it says in an opinion, that has any direct legal effect. Hughes v. Eisner, 8 N.J. 228 (1951). There can be no doubt, as we have already emphasized, that the direct legal effect of the Baldwin judgment did not extend to plaintiff's property.
Plaintiff is in no different position from any of the hundreds of other taxpayers in the various municipalities of Essex County who chose to pay their 1952 taxes based on the revised assessments, without taking any legal action whatsoever. Were the judgment in plaintiff's favor allowed to stand, all of them might be entitled to come into court and institute actions to recover alleged overpayment of taxes, so long as they filed their complaints before the statute of limitations had tolled.
The March 20, 1952 order of the county tax board, considered apart from the resulting revised assessment, was appealable under N.J.S.A. 54:2-35 within one month of the action. Rules, Division of Tax Appeals, Rule 5(a), revised March 8, 1949 (now Rule 5D, revised November 1, 1956). The revised assessment proper was appealable to the county tax board as an appellate body on or before August 15, 1952 under N.J.S.A. 54:3-21, with the right of further review before the State Division of Tax Appeals, N.J.S.A. 54:2-39, and then to this court.
Plaintiff took neither course. If it had any doubt as to the jurisdiction of the tax tribunals to entertain appeals involving allegations of discrimination  a doubt that prompted the court in the Baldwin case to assume jurisdiction  it could, like other taxpayers similarly affected by the tax *480 board order, have sought relief by a proceeding in lieu of prerogative writs in the Superior Court. (We observe that it has now definitely been determined in Gibraltar Corrugated Paper Co., Inc., v. North Bergen Township, 20 N.J. 213 (1955), that county boards of taxation and the Division of Tax Appeals have appropriate jurisdiction to grant relief on the ground of discrimination.) However, R.R. 4:88-15(a), as it then read, required that a proceeding in lieu of prerogative writs be commenced within 30 days of the accrual of the right to such review. That time has long since expired.
Despite its failure to seek direct relief from the assessment before the appropriate administrative agencies or in the courts, plaintiff now seeks to recover from the city a portion of the tax which it voluntarily paid without protest. It brought the present action after having slept on its rights for almost four years. The point here is not one of laches: the express provisions of the cited statutes and rule themselves now preclude the pursuit of any remedy thereunder. They demonstrate a strong public policy that actions contesting the assessment of taxes should be brought promptly within the specified periods of time. Having failed to take appropriate and timely action, plaintiff has forfeited any right it may have had to relief. Cleff Realty Co., Inc., v. Jersey City, 41 N.J. Super. 465 (App. Div. 1956). Cf. Heather Holding Co. v. Division of Tax Appeals, 36 N.J Super. 195 (App. Div. 1955).
We perceive in plaintiff's argument an attempt to distinguish this action from a statutory proceeding which might have been brought under the tax statutes hereinabove referred to and from an in lieu proceeding such as was instituted in the Baldwin case. The contention is that the present suit is simply one to recover taxes paid on an illegal assessment. But the assessment itself was certainly not illegal; there was no lack of authority in the county tax board to revise and correct the assessment on the property in question. R.S. 54:3-15, 54:4-46 and 54:4-55, as amended. And we have already stated our conclusion that *481 the Baldwin judgment did not set aside plaintiff's assessment, but applied only to the specific properties of those who brought that action.
It is argued that had plaintiff joined in the Baldwin case, the increased 1952 assessment on its property would surely have been set aside. But whether or not the assumption be sound, the fact is that this did not take place. We cannot deal with supposititious cases.
In the present situation the rule is applicable that the voluntary payment of a tax is not recoverable unless the underlying assessment is first set aside in a judicial proceeding. Mayor, etc., of Jersey City v. Riker, 38 N.J.L. 225, 226, 227 (Sup. Ct. 1876). In that case it was held that the tax paid was recoverable because the assessment had previously been set aside on certiorari, thereby depriving the tax payment of any legal foundation. Other cases cited by plaintiff, where an assessment or tax paid was allowed to be recovered in whole or in part, involved situations where the assessment which was the basis of the payment had been vacated or reduced as a result of judicial or quasi-judicial proceedings. Mayor, etc., of Jersey City v. O'Callaghan, 41 N.J.L. 349 (E. & A. 1879); Ocean Grove, etc., Ass'n v. Borough of Bradley Beach, 91 N.J.L. 364 (Sup. Ct. 1918). Cf. Hahne Realty Corp. v. City of Newark, 119 N.J.L. 12 (E. & A. 1937); Milmar Estate, Inc., v Borough of Fort Lee, 36 N.J. Super. 241 (App. Div. 1955).
The entire public policy underlying our tax assessment system militates against our courts entertaining an action such as this. The Legislature has set up an orderly procedure pursuant to which any one aggrieved by the assessment laid on his property can have administrative respite and correction, subject to final appeal to the Appellate Division from the Division of Tax Appeals. The mere fact that the increase in plaintiff's 1952 assessment was by reason of a county tax board revision does not affect this consideration. Actually, there is no completed assessment of any particular property for any given year until the county tax board has completed its statutory function of examining, revising, *482 correcting and equalizing the tax lists and duplicates as returned to it by the local assessors, pursuant to N.J.S.A. 54:4-46 to 48. Any change finally emerging from the revision process, which is now required to be completed by May 1 of each year, N.J.S.A. 54:4-55 (the date was formerly April 1), represents the assessment on which the taxpayer's tax bill is based and from which, if he is aggrieved, he may appeal to the county tax board as the quasi-judicial statutory tribunal under N.J.S.A. 54:3-21, and further, from the final action of the county board to the State Division of Tax Appeals under N.J.S.A. 54:2-35 or 39. See Hackensack Water Co. v. Division of Tax Appeals, 2 N.J. 157 (1949).
Moreover, the assessment as it emerges on May 1 from the revision process enters into the aggregates of assessed valuations within the various municipalities, which are used by county tax boards for purposes of apportioning the county tax burden among the several municipalities and for apportioning the statutory state school aid. An adjustment of these aggregates to reflect changes in assessments resulting from appeals taken in due course is provided for by N.J.S.A. 54:4-49 to 51.
From all this it is clear that public policy requires the orderly and expeditious pursuit of the statutory and legal remedies made available for the correction, revision or reduction of tax assessments in order that the adjustments of the municipalities in their relation to each other and to their taxpayers, as well as for budgetary purposes, may be made final at as early a date as possible. See Borough of Kenilworth v. Board of Equalization of Taxes, 78 N.J.L. 439 (E. & A. 1909); Town of Montclair v. State Board of Tax Appeals, 127 N.J.L. 382, 388-9 (Sup. Ct. 1941).
For the foregoing reasons, the judgment of the Law Division must be reversed. This conclusion renders unnecessary consideration of the separate question as to what remedy the city would have were the judgment to be affirmed.