ANDEEW, J.T.C.
(temporarily assigned).
In this proceeding plaintiff asserts that rollback taxes were erroneously imposed by the Mercer County Board of Taxation for the tax years of 1980, 1981 and 1982.
Plaintiff, L.S. Village, Inc., is the owner of property known and designated as Block 49, Lots 6Q and 7 on the tax map of Lawrence Township. Apparently plaintiffs property met all the statutory requirements of the Farmland Assessment Act, N.J.S.A. 54:4-23.1 et seq. for tax years 1980,1981 and 1982 and was therefore valued, assessed and taxed as farmland[1] under the act for those years. However, on August 4, 1982 defendant’s assessor filed his omitted farmland rollback assessment tax list. By doing so defendant’s assessor sought approval of the Mercer County Board of Taxation for the imposition of rollback taxes for the three years in question in accordance with NJ.S.A. 54:4-23.8, -23.9.[2]
The assessor sought rollback assessments because plaintiff had secured preliminary subdivision approval for the property in question from the Lawrence Township Planning Board on *292 September 11,1981.[3] At that time N.J.S.A. 40:55D-59 provided for the cessation of farmland assessments and imposed rollback taxes when land which had been assessed as farmland received, among other things, preliminary subdivision approval.
On September 13, 1982 the county board held its hearings on omitted assessments. Apparently plaintiff did not appear but it does not dispute that it received proper notice of the scheduled hearing date. The county board imposed rollback taxes as requested by the Lawrence Township assessor but the exact date of such action is not reflected in the record before this court. The record reveals that hearings on omitted assessments were conducted on September 13, 1982. It further indicates that on October 19 and 25, 1982 the county board’s county tax administrator certified summaries of omitted assessments which included plaintiff’s rollback assessments for 1980, 1981 and 1982. Therefore, the action of the county board must have taken place between the hearing date of September 13, 1982 and the dates of the certifications, to wit, October 19 and 25, 1982.
The parties have stipulated that defendant, apparently through its tax collector, sent preliminary tax bills, which reflected the action of the county board, to plaintiff in late October 1982. In October 1983 plaintiff paid the assessed rollback taxes. Plaintiff did not take action to challenge the decision of the county board imposing the rollback assessments until October 26, 1983, a little over one year after the action of the county board, when it filed a complaint with the Tax Court seeking a refund of rollback taxes.
In its complaint plaintiff claims that the imposition of rollback taxes by the county board for the years 1980, 1981 and 1982 was erroneous because the determination was based on a statute, N.J.S.A. 40:55D-59, which had been declared unconsti *293 tutional by the Tax Court on September 23, 1982. Centex Homes, Inc. v. Manalapan, 4 N.J. Tax 599 (Tax Ct.1982), certif. granted 94 N.J. 517, 468 A.2d 175 (1983), remanded to App.Div. 95 N.J. 218, 470 A.2d 433 (1983), app. dism. upon stipulation (May 24, 1984). Therefore, plaintiff was entitled to a refund of the rollback taxes it paid.
Because there was some question as to whether the Tax Court had jurisdiction to make a determination, this matter was transferred to the Superior Court, Law Division, and then referred to me as a Tax Court judge temporarily assigned to the Law Division of the Superior Court pursuant to a Supreme Court directive dated July 10, 1981. See West Milford Tp. v. Garfield Recreation Comm., Inc., 91 N.J. 233, 450 A.2d 557 (1983); see also Ward v. Keenan, 3 N.J. 298, 70 A.2d 77 (1949); cf. Alid, Inc. v. No. Bergen Tp., 180 N.J. Super. 592, 436 A.2d 102 (App.Div.1981), app. dism. 89 N.J. 388, 446 A.2d 126 (1981).
The parties have stipulated that the property in question did in fact meet all the requirements of the Farmland Assessment Act, N.J.S.A. 54:4-23.1 et seq. for valuation, assessment and taxation pursuant to the act for tax years 1980, 1981 and 1982. The action of the. county board in imposing rollback taxes was apparently based solely upon the authority of N.J.S.A. 40:55D-59 since all of the requisites for farmland assessment had otherwise been satisfied.
Originally the New Jersey Constitution and the Farmland Assessment Act provided for farmland assessment for property that was actively devoted to agricultural or horticultural use. N.J. Const. (1947) Art. VIII, § 1, par. 1(b); N.J.S.A. 54:4-23.2, -23.7. The constitution and the implementing act also provided for rollback taxes when land that had been assessed as farmland was “applied to a use” other than farmland. N.J. Const. (1947) Art. VIII, § 1, par. 1(b); N.J.S.A. 54:4-23.8. Subsequently, the Legislature enacted N.J.S.A. 40:55D-59 (effective August 1, 1976), a section of the Municipal Land Use Law, N.J.S.A. 40:55D-1 et seq. which provided for the cessation of farmland assessment and the imposition of rollback taxes when *294 an owner received preliminary subdivision, site plan or planned development approval for a use other than farmland even though the land continued in active farmland use.
N.J.S.A. 40:55D-59 provided in pertinent part:
a. Any parcel of land receiving preliminary subdivision, site plan or planned development approval for a use other than agriculture or horticulture, notwithstanding its valuation assessment, and taxation as an agricultural or horticultural use pursuant to the provisions of the “Farmland Assessment Act of 1964,” (P.L.1964, c. 48, C. 54:4-23.1 et seq.), shall be valued, assessed and taxed as of January 1 of the year following such preliminary approval as other land in the taxing district, such value and assessment to be established and taxes paid in accordance with the provisions of sections 8 and 9 of the “Farmland Assessment Act of 1964,” (P.L.1964, c. 48, C. 54:4-23.1 et seq.)....
With regard to the assessment of rollback taxes on the subject property, the appropriate appeal procedure is contained in N.J.S.A. 54:51A-9 which provides that appeals from decisions of a county board of taxation must be filed within 45 days of the county board’s determination. Although it is not clear when the county board rendered its determination, it is readily apparent that plaintiff did not appeal within 45 days of the county board’s decision to impose rollback taxes.
Additionally, plaintiff did not challenge the constitutionality of N.J.S.A. 40:55D-59 as being violative of the preferential treatment afforded farmland in Art. VIII, § 1, par. 1(b) of the New Jersey Constitution by means of a timely action in the Superior Court in lieu of prerogative writs, i.e., within 45 days after the accrual of the right to review. R. 4:69-6(a), -6(c).
On September 23, 1982, 10 days after the county board’s omitted assessment hearings, but approximately one month before the Mercer County tax administrator certified summaries of omitted assessments, the Tax Court held in Centex Homes, Inc. v. Manalapan, supra, that N.J.S.A. 40:55D-59 was constitutionally violative of Art. VIII, § 1, par. 1(b) of the New Jersey Constitution and therefore could not be used as a basis to impose rollback taxes for land which otherwise con *295 formed with the requirements of the Farmland Assessment Act and the New Jersey Constitution.[4]
In its complaint plaintiff contends that Centex is dispositive of the issues in this proceeding and therefore this court must reverse the determination imposing rollback taxes. Defendant asserts that plaintiffs complaint is untimely and therefore must be dismissed.
In response to defendant’s assertion of untimeliness plaintiff raises a number of issues. Plaintiff argues that (1) defendant is estopped to deny timely filing because of the assurances given by defendant’s assessor to plaintiff’s counsel; (2) since N.J.S.A. 40:55D-59 was declared to be unconstitutional that statute is void from its inception and therefore every act done under an unconstitutional enactment must be remedied even though the applicable time periods within which to challenge the action of the county board expired long before the filing of plaintiff’s October 26, 1983 complaint; (3) the county board’s erroneous action is correctable pursuant to the “correction of errors” statute, N.J.S.A. 54:51A-7; (4) interest on the rollback taxes was improperly computed in light of N.J.S.A. 54:4-63.20; (5) the county board erred in assessing rollback taxes for tax year 1980 based on an incorrect interpretation of N.J.S.A. 4Q:55D-59; lastly, (6) defendant’s counterclaim seeking an increase in farmland assessed value should be dismissed as untimely.
Defendant has not specifically responded to each of plaintiff’s contentions choosing instead to rely on its argument that this court is without jurisdiction to hear plaintiff’s untimely complaint.
I.
On November 22,1982 counsel for plaintiff submitted a letter to the Lawrence Township assessor in which plaintiff expressed the opinion that rollback taxes were not appropriate since the *296 Centex case had held that N.J.S.A. 40:55D-59 was unconstitutional. Plaintiff argues that the assessor’s response led his attorney to believe that the matter would be disposed of without the need for a taxpayer appeal and that the rollback assessment would be rescinded. Accordingly, plaintiff contends that to its detriment, it relied upon the assessor’s assurances, and therefore, defendant should be estopped to deny timely filing.
In response to plaintiff’s contention, the assessor has certified that after his receipt of counsel’s letter of November 22, 1982, he encouraged plaintiff to immediately proceed with a formal appeal. Plaintiff denies any recommendations in this regard made by the assessor, and, in support of a claim of justifiable reliance on the authority of the assessor to act independently to correct a patently erroneous assessment, plaintiff cites the Handbook for New Jersey Assessors. Sections 1102.1 et seq. discuss the assessor’s function as an appeal agency and essentially authorize the assessor to act to correct assessments on his tax list any time prior to May 13, the date provided by statute by which the county board of taxation must certify the tax list submitted by the assessor. See N.J.S.A. 54:4-55. Plaintiff now represents that in light of the assessor’s independent authority to seek to informally correct erroneous assessments, and due to the assessor’s manifestation that because of the Centex holding the imposition of rollback taxes in that case was in error, it may now rely on the assessor’s failure to invoke the above procedure to justify its own failure to initiate a formal appeal to recover rollback taxes. As such, plaintiff claims that defendant is estopped from asserting the expiration of the appropriate limitation period as a defense to the present action.
 Plaintiff in this case has not sufficiently established a claim of estoppel. Estoppel is properly invoked only where the party raising the claim reasonably relied to his detriment on the objective manifestations of his adversary, or an agent *297 authorized to act on behalf of his adversary. Miller v. Teachers’ Pension & Annuity Fund, 179 N.J.Super. 473, 476-477, 432 A.2d 560 (App.Div.1981). Plaintiffs reliance was not reasonable for several reasons. First, the assessor’s authority to correct errors in assessments does not extend to permit changes in assessments approved by the county board. In this case the assessor moved before the Mercer County Board of Taxation to impose rollback taxes on the subject property. The board approved rollback. The assessor is not empowered to effect alterations either formally or informally in county board decisions such as those at issue here. Furthermore, it does not appear from the record that the assessor ever expressly or impliedly represented to plaintiff that relief could be granted absent a formal appeal. On the contrary, by letter dated July 25,1983 the assessor indicated to plaintiff’s attorney that, if an appeal were initiated, he would have no choice, in view of the Centex decision, but to agree to a stipulation of settlement in plaintiff’s favor. Admittedly, the factual circumstances surrounding the sequence of events caused confusion among the parties regarding the effect of the Centex decision and the appropriate remedy for actions taken in violation of that ruling. However, plaintiff cannot deny its awareness of the applicable 45-day limitation period within which to bring a formal appeal before the Tax Court, nor can it substantiate its failure to do so by asserting misplaced reliance on representations of the assessor which are not adequately supported by the record nor within the authorized scope of the assessor’s permissible functions.
II.
Essentially, plaintiff’s second contention is that as a result of the Centex decision, N.J.S.A. 40:55D-59 is void ab initio and therefore a limitation period, either by way of statute or some equitable concept of laches, cannot be applied to defeat its claim *298 that the holding in Centex must be applied in this case to provide plaintiffs requested relief.[5]
There are at least three decisions in this State which have held that when a statute is determined to be unconstitutional it is void from its inception and any delay in bringing an action would not preclude granting relief. Bogert v. Elizabeth, 27 N.J.Eq. 568 (E. & A.1876); Peckham v. Newark, 43 N.J.L. 576 (Sup.Ct.1881); Provident Inst. v. Allen, 37 N.J.Eq. 36 (Ch. 1883). Bogert was a Court of Errors and Appeals decision but did not cite any authority for the proposition advanced. Peck-ham was a then intermediate Supreme Court decision which cited the Bogert case for authority. Provident was a proceeding in Chancery which also cited Bogert as authority.
There are three New Jersey decisions following those of Bogert, Peckham and Provident which rejected the proposition that an unconstitutional act is not a law and in legal contemplation is as inoperative as though it had never been enacted. Allison v. Corker, 67 N.J.L. 596, 48 A. 1118 (E. & A.1902); Lang v. Bayonne, 74 N.J.L. 455, 68 A. 90 (E. & A.1907); Byrnes v. Boulevard Commissioners, 16 N.J.Misc. 141, 197 A. 667 (Hudson Cty. Ct.1938), aff’d 121 N.J.L. 497, 3 A 2d 456 (E. & A.1939).
In Lang the Court of Errors and Appeals stated that statutes declared unconstitutional are not void ab initio and recognized that good faith reliance on a statute prior to a decision regarding its constitutionality renders actions taken pursuant to the statute enforceable during that time. Similarly, in Allison v. Corker, supra, the Court rejected plaintiff-taxpayer’s request for a refund of taxes paid pursuant to a statute subsequently adjudicated unconstitutional. In denying the refund and up *299 holding the effect of the statute prior to a declaration of its unconstitutionality, the Court stated:
... an unconstitutional statute is nevertheless a statute — that is, a legislative act. Such a statute is commonly spoken of as void. I should prefer to call it unenforceable because in conflict with paramount law. If properly to be called void, it is only so with reference to claims based upon it.. .Por many purposes an unconstitutional statute may influence judicial judgment, where, for example, under color of it, private or public action has been taken. An unconstitutional statute is not merely blank paper. The solemn act of the Legislature is a fact to be reckoned with. [67 N.J.L. at 600-601, 48 A. 1118]
Even though it derogates from the strict logic of the proposition that a void law may not be allowed to have legal effect, this principle of estoppel by judgment has been applied as a method of recognizing and upholding the effect of the operation of a statute prior to a judicial declaration of its unconstitutionality. The result precludes reconsideration of a decision that has become final even though the decision was based on a statute later declared unconstitutional. See 1 Sutherland, Statutory Construction (4 ed. Sands 1972), § 2.07 at 35. The United States Supreme Court has altered its position on this issue and has stated that “prior determinations deemed to have finality” and questions of “public policy” make it evident that “an all-inclusive statement of a principle of absolute retroactive invalidity cannot be justified.” Chicot Co. Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 374, 60 S.Ct. 317, 318, 84 L.Ed. 329 (1940); Compare Norton v. Shelby County, 118 U.S. 425, 6 S.Ct. 1121, 30 L.Ed. 178 (1886) with Chicot Co. Drainage, supra and Lemon v. Kurtzman, 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973); see also Salorio v. Glaser, supra, 93 N.J. at 463, 461 A.2d 1100, in which our Supreme Court indicated that “[t]he modern view is that invalidation of a statute does not automatically invalidate all prior transactions made in justifiable reliance upon the statute.”[6]
*300 In this case one cannot be certain whether the county board judgment was rendered before or after the Tax Court’s decision in Centex. The burden of proof in this regard rests, however, upon plaintiff. Plaintiff has not sustained its burden of demonstrating that the county board acted upon a statute that had been judicially declared invalid because it was in conflict with organic law. It must, therefore, be assumed in this proceeding that the county board did act in accordance with a statute that was purportedly valid at the time that it approved the Lawrence Township’s assessor’s application for the assessment of rollback taxes. The question thus becomes whether the county board action can be disregarded even though it was based on a statute that was presumptively valid at the time of its decision.
The cases that have been reviewed by this court clearly demonstrate that an enactment declared unconstitutional is not necessarily void ab initio and that in order to determine whether legal consequences can be permitted to flow from the act that purported to be a law, there must be a pragmatic inquiry into the policy question of finality of tax assessment determinations in light of the policy considerations underlying the Centex decision. The policy reason supporting the decision in Centex was to encourage the retention of land in farm use in conformity with constitutional design. Centex, supra, 4 N.J. Tax at 608-609. This purpose would not be advanced by a reversal of the action of the county board as it would not further the purpose of “[slowing] the pace of conversion of farmland to more intensive uses.” Id. at 607. It would simply require defendant to refund excess taxes but would not encourage a continuation of farmland use. Indeed, it is the Farmland Assessment Act itself which accomplishes that purpose as it has in this case. The stipulation of the parties reflects that farmland assessment was restored for the subject property for tax year 1985 as it met all of the requisites for such preferential assessment treatment.
In the area of taxation, statutes of limitation and limitation periods play a vital role. Legislative policy has consistently *301 followed the salutary principle that proceedings concerning tax assessments and governmental fiscal matters be brought expeditiously within established time periods. Passaic v. Tax Appeals Div., 54 N.J.Super. 215, 218, 148 A.2d 630 (App.Div. 1959), certif. den. 29 N.J. 583, 150 A.2d 807 (1959). In this regard Judge Goldmann’s analysis in Suburban Dep’t Stores v. East Orange, 47 N.J.Super. 472, 136 A.2d 280 (App.Div.1957) is particularly appropriate for consideration in this case. In Suburban the Essex County Board of Taxation had increased the local property assessments on 62 properties in East Orange, one of which was plaintiff’s. Plaintiff chose not to contest the board’s action in any administrative tribunal or court of law but simply paid its tax bill based on the increased assessment. There were, however, 31 owners of properties in East Orange who did choose to challenge the action of the county board by initially filing appeals with the county board and when these were dismissed by then appealing to the Division of Tax Appeals. Additionally, these 31 owners filed a joint action in lieu of prerogative writs in the Superior Court contending that the action of the county board in changing the assessments of only a small portion of the properties in East Orange destroyed the existing uniformity of assessment and therefore was unconstitutional. The Law Division held that the action of the board was unconstitutional and set aside the increased assessments of the 31 plaintiffs. Baldwin Construction Co. v. Essex Cty. Bd. of Tax., 32 N.J.Super. 18, 107 A.2d 567 (Law Div.1954), aff’d 16 N.J. 329, 108 A.2d 598 (1954).
Thereafter, in Suburban, plaintiff, by a proceeding in lieu of prerogative writs, sought to obtain the same relief secured by the 31 plaintiffs in the Baldwin litigation. Judge Goldmann made it clear that the final judgment as affirmed in Baldwin did not adjudicate the tax status of the properties of those owners who had not joined in the Baldwin action. Suburban, 47 N.J.Super. at 478-479, 136 A.2d 280.
The court in Suburban emphasized the strong public policy that required that “actions contesting the assessment of taxes should be brought promptly within the specified periods of *302 time.” Id. at 480, 136 A.2d 280. It was noted that plaintiff had the opportunity to contest the action of the county board by appealing first to the county board in its appellate capacity on or before August 15 under N.J.S.A. 54:3-21 with the right to seek additional review before the Division of Tax Appeals and ultimately to the Appellate Division. Plaintiff could also have instituted a timely action in lieu of prerogative writs in the Superior Court. Ibid. Plaintiff, however, chose to do nothing until Baldwin had been finally adjudicated and thereby forfeited any right it had to relief because of its failure to take appropriate and timely action.
As the court stated:
Form all this it is clear that public policy requires the orderly and expeditious pursuit of the statutory and legal remedies made available for the correction, revision or reduction of tax assessments in order that the adjustments of the municipalities in their relation to each other and to their taxpayers, as well as for budgetary purposes, may be made final at as early a date as possible. [Id. at 482, 136 A.2d 280]
This same public policy consideration militates against this court entertaining plaintiff’s request for relief. Plaintiff could have followed the appropriate avenues for review of the contested action of the county board in a timely fashion, as did plaintiffs in the Centex Tax Court case. Or, plaintiff could have pursued a timely action in lieu of prerogative writs in the Superior Court. R. 4:69-6(a).
It is clear that plaintiff’s complaint in the Tax Court is untimely. N.J.S.A. 2A:3A-4.1b(1); N.J.S.A. 54:51A-1; N.J.S.A. 54:51A-9; R. 8:4-l(a)(2). It is just as evident that the transfer of this matter to the Superior Court does not correct this deficiency. Proceedings in lieu of prerogative writs are required to be commenced within 45 days of the action sought to be reviewed. R. 4:69-6(a). The present action does not fall within one of the exceptions to R. 4:69-6 permitting an enlargement of time “where it is manifest that the interest of justice requires.” R. 4:69-6(c); see Schack v. Trimble, 28 N.J. 40, 145 A.2d 1 (1958). The present matter does not involve (1) a substantial and novel constitutional question (that issue was *303 decided in the Centex case), (2) an informal determination that is not “a sufficient crystallization of a dispute along firm lines to call forth the policy of repose,” or (3) an important public rather than a private interest which requires adjudication or clarification. Pressler, Current N.J. Court Rules, Comment R. 4:69 (1965).
Moreover, the same policy considerations should obtain in the Superior Court as in the Tax Court relative to proceedings involving tax assessments.
Relative to the jurisdiction issue, one last point requires mention. Plaintiff asserts that the time limitation for filing appeals with the Tax Court is controlled by court rule, to wit, #. 8:4-l(a)(2). Therefore this court can relax the time limitation pursuant to #. 1:1-2 in the interest of justice. This argument was advanced and rejected by the Tax Court in Prospect Hills Apts. v. Flemington, 1 N.J.Tax 224, 227, 172 N.J.Super. 245, 411 A.2d 737 (1979). As the court there indicated #. 8:4-l(a)(4) “merely iterates the statutory deadline.” Ibid. A court has no power by virtue of the relaxation rule, R. 1:1-2, to relax or dispense with a statutory limitation period. Ibid.

III.

Plaintiff contends alternatively that this is a “correction of errors” case and as such the filing time-lines of the “correction of errors” statute, N.J.S.A. 54:51A-7, are applicable. N.J.S.A. 54:51A-7 provides in pertinent part:
The tax court may, up on the filing of a complaint at any time during the tax year or within the next 3 tax years thereafter, by a property owner, a municipality or a county board of taxation, enter judgment to correct typographical errors, errors in transposing, and mistakes in tax assessments,.. .The tax court shall not consider under this section any complaint relating to matters of valuation involving an assessor’s opinion or judgment. [Emphasis supplied]
The statute appears to provide a method by which errors made by an assessor can be corrected. This is evidenced by the language in the statute that precludes use of the statute if the alleged error involves an assessor’s opinion or judg *304 merit. It is not at all clear that this correction of errors statute can be utilized to correct an error made by a county board of taxation. This is all the more true since the alleged error is a county board decision which was issued after a hearing at which plaintiff had a full opportunity to present its case based on facts fully available to it at the time. It does not appear that the correction of errors statute was designed to provide a mechanism for relief from erroneous determinations by county boards of taxation. If permitted, this would have the effect of bypassing the normal appeal procedure for challenging rollback assessments and would extend the appeal period for such challenges. Such an interpretation does violence to the concept of finality of assessments necessary for the predictability of revenues and the orderly financing of government. See Suburban Dep’t Stores v. East Orange, supra, 47 N.J. Super. at 480-482, 136 A.2d 280.
Assuming, however, that the statute is broad enough to provide this court with jurisdiction to review an error in assessment by a county board of taxation it is apparent that the error is not one that is correctable under N.J.S.A. 54:51A-7. The correction of errors statute, as noted above, provides that upon proper filing, the Tax Court may enter judgment to correct typographical errors, errors in transposition and mistakes in tax assessments. The court, however, should not consider under this section any complaint relating to matters of valuation involving opinion or judgment.
In this case the county board exercised its judgment in imposing a rollback assessment. This assessment may have been a mistake of law but whether the mistake is one of fact or law, it remains a judgmental error reversible only by the customary statutory appeal process and not under the correction of errors statute. The county board fully intended to provide a farmland rollback assessment. If a mistake such as this were correctable under the correction of errors statute the statutory filing deadlines for appeals from actions of a county board of taxation would be meaningless. Taxpayers could *305 contest assessments three years after the year in which the alleged mistake occurred by contending that a county board made a mistake of law. Clearly, such a result would frustrate the legislative intent of the appropriate statutory limitations period. The correction of errors statute must be strictly construed and limited to typographical, transpositional and ministerial errors and not errors involving opinion or judgment. See Manczak v. Dover Tp., 2 N.J.Tax 529 (Tax Ct.1981); Bressler v. Maplewood, 190 N.J.Super. 99, 461 A.2d 1218 (App.Div.1983); Flint v. Lawrence Tp., 6 N.J.Tax 97 (Tax Ct. 1983); cf. Sabella v. Lacey Tp., 188 N.J.Super. 500, 457 A.2d 1220 (App.Div.1983). Here the error involved judgment or opinion and as such should have been properly challenged in the normal appeal process prescribed by N.J.S.A. 54:4-23.9 and N.J.S.A. 54:4-63.23.
Three additional points require mention. Plaintiff has asserted that interest on the rollback taxes was improperly computed in light of N.J.S.A. 54:4-63.20. Since plaintiff has failed to establish that the county board decision was rendered after October 1, 1982, this allegation is totally without substance.
Plaintiff also contends that the county board erred in assessing rollback taxes for the tax year 1980 based on the county board’s incorrect interpretation of N.J.S.A. 40:55D-59. This challenge goes to the appropriate interpretation of N.J.S.A. 40:55D-59 and should have been presented to the county board at the September 13, 1982 hearing date and if denied, appropriately appealed within the statutory time period as hereinabove set forth. It is clear that plaintiff’s attack on this point is untimely.
Lastly, plaintiff contends that defendant’s counterclaim should be dismissed. This court has determined that plaintiff’s complaint is untimely. As such there is little question that defendant’s counterclaim is also untimely and must also be dismissed. See F.M.C. Stores Co. v. Morris Plains, 100 N.J. 418, 495 A.2d 1313 (1985).
*306 It should be noted that it is not without significance that permitting an application of the Centex decision to the present untimely appeal would engender a proliferation of untimely actions by all those owners of property who were adversely affected by the application of N.J.S.A. 40.-55D-59 since its effective date of August 1, 1976.
In light of all the policy considerations and for the reasons heretofore stated, plaintiff’s claim for a refund of rollback taxes for the tax years 1980, 1981 and 1982 must be denied.

 “Farmland” as used in this opinion means land actively devoted to agricultural or horticultural use. N.J.S.A. 54:4-23.5.

 In its brief plaintiff considers the assessor’s action as the equivalent of filing a complaint with the county board pursuant to N.J.S.A. 54:4-63.13 for an omitted assessment on the property in question in order to assess rollback taxes as set forth in N.J.S.A. 54:4-23.9.

 According to one of several stipulations of facts submitted by the parties the Lawrence Township assessor received notification of the preliminary subdivision on or about September 16, 1981.

 N.J.S.A. 40:55D-59 was thereafter repealed by L. 1983, c. 253, § 1 effective July 7, 1983.

 As our Supreme Court noted in Salorio v. Glaser, 93 N.J. 447, 463, 461 A.2d 1100 (1983) any consideration of this question is in the context of a taxation statute and not a criminal statute or rule of criminal procedure. See Kozlowski v. Kozlowski, 80 N.J. 378, 386, 403 A.2d 902 (1979) in which the Supreme Court stated, in reference to the fornication statute (N.J.S.A. 2A: 110-1) which had been declared unconstitutional, that "an unconstitutional statute is wholly void, and is as inoperative as if it had never been passed."

 It is questionable whether Salorio is applicable to the present proceeding. Salorio dealt with a timely constitutional challenge to a legislative enactment. This case does not involve a timely appeal nor does it involve a constitutional issue (any constitutional issue here was resolved in Centex) therefore the Salorio analysis is not entirely appropriate in this case.